IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES, ) | |
| v. ) | Case No. 21-cr-40 |
| CHRISTOPHER QUAGLIN ) | |
| Defendant. ) | |

**DEFENDANT'S SECOND MOTION FOR IMMEDIATE PRE-TRIAL RELEASE**

Comes now Defendant Christopher Quaglin, by counsel, and moves the Court, pursuant to 18 U.S.C. § 3142(i), to order the immediate temporary release from pretrial confinement to the custody of his wife, on conditions suitable to the Court, because Mr. Quaglin cannot properly prepare for his defense while confined.

## I. LEGAL STANDARD

After an initial determination of pre-trial detention, the Bail Reform Act provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Under this statutory provision, the defendant otherwise subject to pretrial detention may be granted temporary release by showing the presence of two (2) factors: (1) that his temporary release is necessary for the preparation of his defense or another compelling reason; and, (2) that he could be released to the custody of the an "appropriate person." *United States v. Dhavale*, No. 19-mj-00092, 2020 U.S. Dist. LEXIS 69800, at *12-13 (D.D.C. Apr. 21, 2020).

## II. ARGUMENT

### A. Mr. Quaglin cannot prepare for trial

#### 1. Mr. Quaglin's health in prison prevents him from preparing for trial

The Court is well aware of and has expressed concern about Mr. Quaglin's staggering weight loss while being detained at Northern Neck Regional Jail (NNRJ). Mr. Quaglin has a severe allergy to gluten due having celiac disease, which he was diagnosed with as a child, and he gets severely ill when he eats food that has been cross contaminated with gluten. The Jail has refused to cooperate with him or his attorneys to provide meals that he can be assured are free from cross-contamination with gluten, so he has subsisted only on Ensure drinks and protein bars that he purchases at the Jail commissary at his own expense. Mr. Quaglin continues to lose weight, and has lost another 8 pounds since the last hearing, 4 pounds since the Jail Doctor falsely proclaimed that Mr. Quaglin's weight had "stabilized."

> At the last hearing, the Court stated:
>
> I am concerned about his health, as I think everybody is. As I said, I thought some of the e-mails between Mr. McBride and the Warden were probably a little unprofessional on both sides. Mr. Gross, now that you're in the case, it might be a good idea for your client if you tried to take a stab at communicating with the Warden. I assume that you all want to be prepared and get focused on trial, and I'd like to see Mr. Quaglin be in a position to get to trial as soon as possible. So sir, I'd encourage you to try to start a new note with the Warden.

Exhibit A, Transcript at 103:8-18. Per the Court's instructions, Mr. Gross emailed the Warden in an attempt to find a solution to Mr. Quaglin's health crises, but his professionalism was met with scorn, hostility, and ultimately with the Warden refusing to engage in any communication at all. *See Quaglin v. Hull,* Case No. 1:22-cv-01154, ECF No. 36-2. It is clear from the Warden's emails that he is unwilling to address Mr. Quaglin's weight loss, and he is indifferent to Mr. Quaglin's suffering.

Under these conditions Mr. Quaglin cannot possibly prepare for trial. The Court should release him to the custody of his wife, Moira Quaglin, who is a nurse and is capable of preparing meals that Mr. Quaglin will eat and will restore his health so that he can prepare for trial.

**2. Mr. Quaglin cannot prepare for trial because he does not have the tools to review the voluminous discovery.**

Judge Thomas Hogan of this Court recently released Ryan Nichols from Rappahannock Regional Jail because Judge Hogan found that Mr. Nichols could not adequately prepare for trial while being detained. The findings were based on the fact that Mr. Nichols did not have access to evidence.com and the relativity database where the Government uploaded the thousands of hours of video evidence.

Like Mr. Nichols, Mr. Quaglin has never had access to evidence.com or relativity, and has not had any access to the internet at any of the facilities he has been detained in since April of 2021. *See* Exhibit B, Quaglin decl. When he was in the Essex County Correctional Facility from April 2021 through September of 2021, he was given a flash drive with discovery by a previous attorney which he was never able to view. *Id.* When he was in the DC Jail, he signed up to use the Jail laptop but never had a chance to use it. *Id.* In NNRJ he has never had access to a laptop, and he is not able to access the internet. *Id.*

Further, he does not have the ability to speak privately with his attorneys. Mr. Quaglin is limited to 15-minute phone calls. *Id.* The phone is located in an area where he is not afforded privacy from other prisoners. *Id.* The calls may also be monitored and/or recorded by the Jail. *Id.* The phone is next to a two-way speaker box that is monitored by jail staff, and which Mr. Quaglin has no way of knowing if they are listening in. *Id.* Accordingly, there is no viable option for him to speak with his attorneys and maintain his privilege.

He is forbidden by the Jail from video conferencing with his attorneys. The closest of his two attorneys lives in Baltimore, MD, which is commutable to this Court, but is a three-and-a-half-hour drive from the Jail. Jail attorney visits are limited to 2 hours which means that his attorney has to drive seven hours for a two-hour visit. Accordingly, it requires nine hours of attorney time for a two-hour meeting. This is unreasonable. Even with an attorney, Mr. Quaglin is forbidden from accessing the internet, which would prevent him from accessing evidence.com or relativity.

Further, the Jail has in the past placed and is currently threatening to send him against his will to "medical" which is essentially solitary confinement, where he has no access to the phone to call his attorney. *Id.*

The situation in NNRJ provides the same or less access to view his discovery and/or to speak with his attorneys as the Jail in Rappahannock which Judge Hogan ruled unconstitutionally deprived Ryan Nichols of his access to the Courts, and therefore ordered his release. Accordingly, Mr. Qualgin should also be released for the same reasons.

This is in addition to the fact that, like Ryan Nichols, Mr. Quaglin had his discovery twice taken by the Government and never returned. First, when Mr. Quaglin was in the Essex County Correctional Facility his attorney delivered to him a flash drive with electronic discovery which was taken by the Government and never seen again. Second, as the Court is aware, while Mr. Quaglin was in the DC Jail, Mr. Quaglin's attorney Mr. McBride delivered Mr. Quaglin's discovery to the DC Jail on the same day that Mr. McBride delivered Ryan Nichols' discovery to the DC Jail. Mr. Quaglin was never able to view the electronic discovery that was delivered to him because before the Jail allowed him to use a computer, on November 9, 2021, Mr. Quaglin

was suddenly transferred[1] from the DC Jail to BOP Lewisburg where he remained for over a month, and then to the Alexandria Detention center where he remained for 3 days, and then on December 20, 2021, he arrived at NNRJ. The Government took possession of Mr. Quaglin's discovery before he was transferred from the DC Jail, and it was never seen again. The Government did the same to Ryan Nichols, another January 6th detainee, when he was transferred from the DC Jail to a regional Jail in Virginia. When Mr. Quaglin brought the issue of his discovery to this Court, the Court conceded that the Government writ large may have a responsibility to locate the discovery. Transcript at 95:14-16. The Government lost his discovery and they cannot avoid liability.

Mr. Quaglin simply cannot prepare for trial at NNRJ. He does not have reasonable access to his attorneys, he cannot make private phone calls or any video calls, he does not have access to the internet to view evidence.com or the relativity database. Transfer is not an option. Mr. Quaglin has already been transferred to six different prisons and there is no reason to believe that a seventh prison will be any better. The Government has failed to provide a facility that enables him to prepare for trial, and therefore he should be transferred to the custody of his wife where he will be able to do so.

**B.  Conditions of release**

Should the Court grant this Motion, Mr. Quaglin proposes the following conditions of release strictly for the purposes of regaining his health and preparing for trial. These conditions were approved by Judge Hogan in the case of *United States v. Nichols,* Case No. 1:21-cr-117-1.

---

[1] The transfer occurred just 5 days after Mr. Quaglin was photographed at the DC Jail during a highly publicized visit by Congresswoman Marjorie Taylor Greene, who the NNRJ Warden referred to in an email to Mr. McBride as an "inappropriately engaged Georgia Congress woman." The Congresswoman's visit brought national attention to the inhumane treatment of the January 6 detainees and all of the prisoners at the DC Jail.

1. **Custodian**

Mr. Qualgin's wife Moira Quaglin is an appropriate third-party custodian. Ms. Quaglin has been deemed eligible to be a third-party custodian by Pretrial Services, has no criminal history, and resides at her and Mr. Quaglin's home in New Jersey. Most importantly, Ms. Quaglin is a registered nurse and has experience preparing food for someone with celiac disease. *See* ECF No. 419-2. She is without question the single most qualified custodian for Mr. Quaglin, especially given his particular medical condition. Mr. Quaglin has agreed to participate in any supervision program recommended by the Court. Ms. Quaglin's nursing schedule allows for her to supervise Mr. Quaglin at home from Tuesday-Friday. *See id.* On the days that she works, Mr. Quaglin will be occupied with caring for his infant son Nathan. The Government does not allege that Mr. Quaglin is a flight risk, and because Mr. Quaglin will be occupied with caring for his infant son, he will not pose any threat to the community when Ms. Quaglin is working her nursing shifts.

2. **Conditions of Release**

Mr. Quaglin submits that the house will not contain any firearms, destructive devices, or other weapons. Mr. Qualgin will not leave the property for any reasons other than Court appearances and medical necessities approved by pretrial services. Mr. Quaglin will have no association or contact with his co-defendants or any witness in the investigation or prosecution. Ms. Quaglin will provide Mr. Quaglin with a special computer that, as set forth below, is configured so that Mr. Quaglin can use it only to view his discovery, conduct legal research, prepare notes, and communicate with his attorneys. Mr. Quaglin will abide by any additional conditions that the Court suggests.

3. **GPS monitoring**

Mr. Quaglin will submit to GPS monitoring provided by a private company approved by pretrial services. This will not only allow Mr. Quaglin's location to be tracked at all times, it also records his movements such that periodic reports may be generated to verify his confinement. Mr. Quaglin will pay the monthly service fee for the GPS service.

4. **Preparation for trial**

To prepare for trial, Ms. Quaglin will provide Mr. Quaglin with a special computer that has been designated specifically for this purpose and configured to restrict access to internet sites other than those approved by the Court and/or pretrial services that are required for trial preparation - specifically, evidence.com and the relativity database. Mr. Quaglin also requests access to online legal research databases such as Westlaw or Lexis, to be used only for the purpose of legal research related to his case. Use of online legal research tools was requested by Defendant Jeffrey Scott Brown, and was granted by Judge Mehta. *See United States v. Brown,* Case No. 1:21-cr-0178, ECF No. 138.

The computer will also allow Mr. Quaglin to view discovery on external hard drives. The computer will also include Microsoft Word and Excel to prepare notes and documents to share with his attorneys. The computer will also include email software such as Microsoft Outlook, and a special email account will be created that Mr. Quaglin will only use to send emails, documents, and video files to his attorneys. The computer will also include video conferencing software that Mr. Quaglin will only use to communicate with his attorneys. Ms. Quaglin will also provide Mr. Quaglin with telephone that offers no features other than voice call and will be used only to communicate with Mr. Quaglin's attorneys. Mr. Quaglin will bear the expense of all of the aforementioned. Mr. Quaglin will not have access to any other technology or software unless pre-approved by the Court and pre-trial services.

To ensure Mr. Quaglin complies with Internet restrictions, Ms. Quaglin will purchase a device called the "Trend Micro Home Network Security Firewall," https://www.trendmicro.com/en_us/forHome/products/homenetworksecurity.html, that limits and restricts internet access of any kind other than the websites permitted by the Court and pre-trial services. If necessary, Ms. Quaglin will be able to verify that Mr. Quaglin complied with the Court's restrictions by generating tracking reports of all of the websites that were visited on the computer.

5. **Medical Care**

Mr. Quaglin will comply with all medication prescribed by his doctors, and will sign all necessary release forms for pretrial services to obtain and report compliance to the Court.

### III.   CONCLUSION

WHEREFORE, the Court should Order Mr. Quaglin to pretrial detention under the supervision of Ms. Quaglin, pursuant to the foregoing conditions, for the purpose of preparing for trial.

Dated: November 27, 2022

Respectfully submitted,

/s/ Jonathan Gross, Esq.
2833 Smith Ave,
Suite 331
Baltimore, MD 21209
(443) 813-0141
jon@clevengerfirm.com

/s/ Joseph D. McBride, Esq.
Bar ID: NY0403
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
p: (917) 757-9537
e: jmcbride@mcbridelawnyc.com

## **CERTIFICATE OF SERVICE**

I certify that on November 27, 2022, I electronically filed the foregoing document with the clerk of court for the U.S. District Court for the District of Columbia, using the electronic case filing system of the court.

/s/ Jonathan Gross
*Counsel for Defendant*