**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cr-40 |
| | ) | |
| QUAGLIN | ) | |
| _____ | ) | |

**DEFENDANT'S THIRD MOTION FOR RELEASE FROM PRETRIAL DETENTION**
**AND REQUEST FOR A HEARING**

TO THE HONORABLE COURT:

On February 1, 2023. Defendant Christopher Quaglin was transferred for the ninth time since his detention almost two years ago.  Once again, Mr. Quaglin turned to the courts for relief to release him from pretrial detention when suddenly and without warning the Government transferred Mr. Quaglin, thereby mooting the motion.  Mr. Quaglin is now back in the Central Detention Facility (CDF) at the DC Jail.  Mr. Quaglin hereby files this Third Motion for release, and incorporates all previous related filings as if set forth fully herein, including, ECF Nos. 419, 495, 497, 499 and 501,

This is not Mr. Quaglin's first time at the DC Jail. Mr. Quaglin was in the DC Jail from September 20, 2021 to November 9, 2021.  While he was there, on October 13, 2021, Judge Royce C. Lamberth of this Court held the DC Jail in contempt, and referred the Order to the Attorney General of the United States for appropriate inquiry into potential civil rights violations of January 6 defendants, like Mr. Quaglin.  Exhibit A.  On October 18, 2021, the U.S. Marshals conducted an unannounced inspection and review of the Jail and found "systemic failures" at the CDF that "may warrant further examination by the Department of Justice Civil Rights Division."  Specifically, the USMS found, *inter alia*, that: water and food were withheld from detainees for

punitive reasons; water in many of the cells had been shut off for days; food delivery and storage is inconsistent with industry standards; detainees had observable injuries with no corresponding medical or incident reports available to inspectors; and DOC staff were observed antagonizing detainees.

Most notably, the USMS noted that "Several DOC staff were observed directing detainees to not cooperate with USMS inspectors.  One DOC staffer was observed telling a detainee to 'stop snitching.'"  This should of course raise red flags that what the USMS found during the inspection was only the tip of the iceberg, and that the DOC was actively engaging in a cover up of its illegal activities, including threatening the vulnerable detainees under their control with retaliation if the detainees "snitched" on the DOC by reporting the true horrific conditions of the prison.

This should have raised suspicions as to how the CDF could be found to be deplorably below standards while the adjacent CTF facility could be "largely appropriate and consistent with federal prisoner detention standards."  In fact, CTF was only able to barely pass inspection while the CDF failed because while the USMS inspected CDF, the DOC sent in maintenance workers and janitors and forced detainees to frantically scrub the CTF to cover up the deplorable conditions.  This is testified to by January 6 detainees including Mr. Quaglin.  *See Quaglin v. Garland*, 1:22-cv-1154, ECF No. 2, ¶ 56; *Nichols v. Garland*, 1:22-cv-2356, ECF No. 1, ¶ 48.

Even after the contempt order, the failed USMS inspection, and the obvious cover up of illegal activity, the Department of Justice has yet to conduct a thorough investigation of the DC Jail or the CDF.  Since the contempt order in October of 2021, the Department of Justice has become aware that DOC officers at CDF are involved in various criminal schemes, confirming allegations made by Mr. Quaglin, other January 6 pretrial detainees, and inmates at CDF and the

DC Jail.  For example, on February 24, 2022, the Department of Justice issued a press release about a D.C. Department of Corrections Officer Arrested for Bribery and Smuggling of Contraband.  Exhibit C.  According to the DOJ, the DOC Officer was accepting money to bring weapons and drugs to inmates, creating deadly conditions and lethal threats to inmates and detainees inside the prison.  Once again, on September 26, 2022, the DOJ issued an almost identical press release when another corrections officer at CDF was arrested for operating a bribery scheme to bring in prohibited items.  Exhibit D.  Despite these arrests, the DOJ did not conduct a comprehensive investigation.

The DOJ was on notice of other errant guards at the CDF from filings in this court by January 6 defendants, yet took no action.  For example, in a court filing in this Court in August of 22, a January 6 detainee made several allegations of abuse and other illegal activity against specific officers at the DC Jail, including Lieutenant Lancaster, who "verbally and mentally abuses inmates…[and] also oversees officers and guards who do the same, and is suspected of bringing drugs into the prison."  *Nichols v. Garland*, 1:22-cv-2356, ECF No. 1, ¶¶ 66-79. Despite also being accused of other heinous crimes and abuses, Lt. Lancaster continued working at the DC Jail until January 30, 2023.  Exhibit E.  There was no investigation by the Department of Justice into Lancaster or any other of the allegations made by the January 6 defendants.

As late as May 6, 2022, a bipartisan letter was sent by three prominent United States Senators - Democrat Senator Richard J. Durbin, Chair of the Committee on the Judiciary, Republican Senator Charles E. Grassley, Ranking Member of the Committee on the Judiciary, and Democrat Senator Benjamin L. Cardin - urging the Department of Justice to "immediately investigate potential civil and criminal violations of federal law at CDF and make the results of those investigations public."  But there has been no investigation by the Department of Justice.

Based on this alone, Mr. Quaglin should be released immediately to the custody of his wife. The Government has repeatedly failed to appropriately detain Mr. Quaglin now for almost two years, and has burned through facility after facility, to the point that it has run out of facilities to transfer him to, and has returned him to one that the Court and the USMS have expressly stated are inappropriate for detention.

Worse yet, even with all of the censures, the DC Jail has not changed a bit. *See* Exhibit F, Quaglin Declaration. Mr. Quaglin arrived at CDF on February 1. It took 48 hours for the Jail to process that Mr. Quaglin has celiac disease and requires a special diet. Since his diet was "processed," Mr. Quaglin was given such gluten items as wheat bread, flour tortillas, cream of wheat, bran flakes, and pasta. On February 8, he was given cream of wheat for breakfast and the kitchen refused to rectify the situation, even after being told that the doctor ordered no wheat products. The DC Jail has a history of depriving Mr. Qualgin of a gluten-free diet for his celiac disease. *Quaglin v. Garland,* 1:22-cv-1154, ECF No. 2, ¶¶ 45-50. Last time Mr. Quaglin was in the DC Jail, he submitted grievance after grievance documenting the Jail's failure to provide him with food he could eat.

Mr. Quaglin is locked down 22 hours a day during the week and 48 hours straight on the weekends. He is not provided with books or a tablet to communicate with his wife. He cannot make phone calls while locked down. When he is not locked down he can only make 15 minute phone calls. No phone calls are allowed on the weekends. For long periods of time there is no hot water, and no showers are available during lockdown. When he first arrived, he was unable to shower for five days. The detainees are not provided with shower shoes to protect them from filth in the bathroom. They are not provided with soap. They were not provided with toilet paper until they requested it, and were finally provided with it. Laundry has not come for an

entire week.  The Jail prevented him from speaking with his wife and infant son on his son's birthday.

A case manager, Mr. Wilson said, "if you are a good boy you can go to CTF."  But on February 8, he was told by Wilson that he would not be sent to CTF.  He is denied grievances when he is in his cell.  The first time he was able to submit a grievance he immediately filed one to address the issue of his diet. The Jail has not responded, and now he has to wait 15 business days until he can elevate the grievance to the next level.

Mr. Quaglin no longer has his discovery.  His discovery was mailed to him by his attorneys on January 1 to Rappahannock Regional Jail where he was detained at the time.  It took almost three weeks until he was given access to a computer and his discovery and was able to finally begin to review it, but then just over a week later he was transferred again.  He is no longer in possession of his discovery, and the location of the discovery is unknown, but he was told that it did not come with him from Rappahannock Regional Jail.

The Government should not be given another chance to transfer Mr. Quaglin to another facility.  Every time he is transferred, he is transferred without informing his attorneys or his family, causing gratuitous distress and emotional anguish to his wife and parents.  Every time he is transferred he must surrender his commissary and possessions.  To date, the Government has needlessly cost Mr. Quaglin almost $20,000.00 by transferring him without warning.  When he is transferred there are issues with his discovery, which he still has not been given an opportunity to review.  When he is transferred there are issues with his diet which has caused him suffering and irreparable harm to his health.

Moreover, the sheer length of Mr. Quaglin's pretrial detention is a per se violation of Mr. Quaglin's due process rights.  In August of 22, Mr. Quaglin filed his first motion for pretrial

release, ECF No. 419, and argued the same.  In *United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986), the Court held that 16 months of incarceration can be unconstitutionally excessive even for detainees charged with "the gravest of order, including predicate acts of murder and conspiracy to commit murder."  The Second Circuit found 14 months of pretrial detention unconstitutional.  United States v. Gonzales Claudio, 806 F.2d 334, 343 (2d Cir. 1986).  The Ninth Circuit recently stated that a twenty-one-month detention is "significant under any metric and is deeply troubling.  United States v. Torres, 995 F.3d 695, 709-10 (9th Cir. 2021).  Mr. Quaglin has not been incarcerated for 22 months, in violation of his rights to due process.

Accordingly, for the reasons stated herein, Mr. Quaglin respectfully requests that he be released from the DC Jail to the custody of his wife, Moira Quaglin.

Dated: February 8, 2023                                        Respectfully submitted,

                                                               /s/ Jonathan Gross
                                                               Jonathan Gross
                                                               2833 Smith Ave, Suite 331
                                                               Baltimore, MD 21209
                                                               (443) 813-0141
                                                               jon@clevengerfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing is being served on opposing counsel via email on

February 8, 2023

/s/ Jonathan Gross