**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | Case No. 1:21-cr-40 |
| ) | |
| QUAGLIN ) | |
| ) | |

**FIRST SUPPLEMENT TO DEFENDANT'S THIRD MOTION FOR RELEASE FROM PRETRIAL DETENTION AND REQUEST FOR A HEARING**

Defendant Christopher Quaglin, by and through counsel, hereby files this supplement to his Third Motion for Release.

Mr. Quaglin has disappeared again. He was last heard from by his wife on the morning of February 18, 2023. He was not heard from since by either his family or his attorneys. Whenever this happens, it means he has been transferred to another facility. Undersigned counsel contacted the Government alerting them of the situation and inquired if there was any information about Mr. Quaglin's whereabouts. A Government attorney responded: "I haven't received any new information on his whereabouts. If he has been transferred - and I have no reason to know whether her has or hasn't - I wouldn't be alerted for 24 hours after the transfer, per safety protocol." It is now three days since his disappearance and there is still no information.

Mr. Quaglin filed his Second Motion for Release (ECF No. 495) on November 27, 2022, while in Northern Neck Regional Jail. On December 23, 2023, two days before Christmas, while the Motion was still pending, Mr. Quaglin went missing, as he had numerous times in the past while in the Government's custody. It was subsequently learned that he was transferred to Rappahannock Regional Jail. Mr. Quaglin's attorneys filed a supplement to the Motion (ECF

No. 501) requesting that he be released from Rappahannock Jail because Rappahannock, by its own admission, cannot provide proper access to the voluminous discovery necessary to prepare for a January 6 case, specifically, the Jail does not provide access to the voluminous discovery databases relativity.com and evidence.com. Mr. Quaglin has never had access to those databases.

By Minute Order dated December 27, 2022, the Court denied Mr. Quaglin's Second Motion for release "in light of the Defendant's transfer to a new facility," and granted the Government 25 days to respond to Mr. Quaglin's one page Supplement. On January 17, 2023, the Government responded, but before Mr. Quaglin could submit a Reply, on February 1, 2023, Mr. Quaglin was moved again to The DC Jail's CDF facility. Anticipating that once again the Court would deny his previous motion in light of yet another transfer, Mr. Quaglin filed his Third Motion for Pretrial Release (ECF No. 519), arguing, inter alia, that he had already been housed in the DC Jail and the Government, by its own admission, knows the CDF facility to be unfit for holding pretrial detainees.

By Minute Order dated February 10, 2023, the Court denied Mr. Quaglin's Second Motion for Release, and ordered the Government to respond to Defendant's Third Motion for Release on or before February 24, 2023. Then, on February 18, Mr. Quaglin disappeared again, and has not been heard from for three days, and the Government admits to not knowing his whereabouts.

This is a pattern that has been going on for almost 2 full years. Mr. Quaglin files a motion seeking release setting forth facts showing the facility holding him, inter alia, makes it impossible for him to prepare for trial, and then while the motion is pending he is transferred to another facility.

In August of 2022, this Court issued an Order dismissing Attorney General Merrick Garland from Mr. Quaglin's petition for habeas corpus because the Court held that Attorney General Garland was not Mr. Quaglin's primary custodian. *Qugalin v. Garland*, et al. 1:22-cv-1154, ECF 25.  Mr. Quaglin argued that Attorney General Garland was the primary custodian because Mr. Quaglin is so frequently transferred that requiring Mr. Quaglin to petition only the facility warden would deprive him of his constitutional right to petition for habeas corpus as Mr. Quaglin could be transferred by AG Garland or his agents at any time, thereby mooting any habeas petitions.  This is exactly why "the unique context of [an] immigration proceeding" requires suit against the Attorney General. *Id.* (citing *Cau v. Lynch*, No. CV 15-0761-FMO (DTB), 2016 WL 1358656, at *3 (C.D. Cal. Feb. 16, 2016)).  Mr. Quaglin argued that this special right to petition the United States Attorney General for habeas corpus should not be reserved only for immigrants to this country, but should be available for United State's citizens as well.  In support, Mr. Quaglin cited *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986).

> The Court rejected Mr. Quaglin's argument and dismissed the Attorney General.
>
> [Mr. Quaglin] points to habeas precedents that allow suit against the Attorney General when a detainee is "rapidly transferred" between facilities. Consol. Opp'n to MTDs at 7, ECF No. 22 (Opp'n). These precedents are inapt. Quaglin might have rotated around several facilities, but he has remained at NNRJ since December 2021. His case thus hardly resembles the precedents he cites. For example, Demjanjuk v. Meese dealt with a federal detainee whose exact location was confidential. See 784 F.2d 1114, 1115-16 (D.C. Cir. 1986). In that "limited and special circumstance[]," the Attorney General was the custodian and a proper defendant. Id. at 1116.

*Quaglin v. Garland*, 1:22-cv-1154, ECF No. 25, at 3-4.

Mr. Quaglin's location is currently unknown, and he has been transferred nine times - two or three times in the last three months alone.  This situation was predictable and brought to the

attention of the Court in August of 2022, but the Court trusted the Government that Mr. Quaglin would remain in NNRJ and would not be rapidly transferred.

The fact remains, Mr. Quaglin has still not seen his discovery, which is his constitutional right.  He has never seen the voluminous discovery databases which is his right as well.  It is not sufficient that his attorneys have access.  The Government suggests that it is enough that Mr. Quaglin's attorneys have access to the databases because "either of Quaglin's attorneys can access those databases and place all files necessary for trial preparation on hard drives for Quaglin to review."  ECF No. 511, at 3.  The Government knows full well that this is impracticable.  The Government's own letters to counsel clearly state, "Please be advised that sharing voluminous files can sometimes take several hours or days depending on the size of the files being shared."  E.g., Letter regarding Capitol Breach Cases Global Discovery Production No. 5, dated Oct. 23, 2021, from U.S. Department of Justice, Channing D. Phillips, Acting United States Attorney, District of Columbia.  The files so far shared with January 6 defendants contain over 14,000 hours of video footage, and it was announced on February 20, 2023, that there are now 30,000 additional hours that may become available.  Mr. Quaglin cannot possibly prepare for his trial without having direct access to the databases, which he has been denied for almost 2 years.

The Government has failed in its duty to detain Mr. Quaglin pretrial.  Accordingly, the Court should order that the Government locate Mr. Quaglin immediately, and order his immediate release to the custody of his wife Moira Quaglin.

## CONCLUSION

For the foregoing reasons, and for all of the reasons cited in all previous motions and filings requesting Mr. Quaglin's release, Mr. Quaglin respectfully requests that he be released from pretrial custody immediately to the custody of his wife Moira Quaglin.

Dated: February 21, 2023                                Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jon@clevengerfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being served on opposing counsel via email on

February 21, 2023

/s/ Jonathan Gross