# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | 1:21-cr-40 |
| | ) | |
| **QUAGLIN** | ) | |
| _____ | ) | |

## ATTORNEY JONATHAN GROSS' RESPONSE TO THE ORDER TO SHOW CAUSE

## INTRODUCTION

On March 23, 2023, the Court Ordered Attorney Jonathan Gross to show cause as to why he should not be referred to the Committee on Grievances for the U.S. District Court for the District of Columbia for attorney discipline under D.C. Rules of Professional Conduct 1.1 (competence), 1.3 (diligence), and 3.3 (candor to tribunal).

The record shows that Mr. Gross acted at all times with competence and diligence, and with candor to tribunal. Mr. Quaglin has expressed that he is satisfied with Mr. Gross' representation and wishes to continue with him, and at no time did Mr. Gross make any misrepresentations to the Court.

## BACKGROUND

The basis for the Order to show cause was a March 6, 2023 Motion to Withdraw, filed by attorney Joseph McBride. Mr. Quaglin was arrested in April of 2021. He first hired a New Jersey attorney, Carlos Diaz-Cobo who represented Mr. Quaglin while Mr. Quaglin was in Essex County prison in New Jersey. The Government moved to have Mr. Quaglin transferred to the District of Columbia in the summer of 2021. At that time, Mr. Diaz withdrew, and Mr. Quaglin retained attorney Joseph McBride, a New York attorney who also handles other January 6 cases.

Mr. McBride entered Mr. Quaglin's criminal case as Mr. Quaglin's sole attorney on August 5, 2021, and filed a civil case on behalf of Mr. Quaglin in the same court in April of 2022.  Mr. Gross entered as second attorney in the criminal case on September 22, 2022, and entered as second attorney in the civil case on October 4, 2022.  The civil case was ordered moot on November 27, 2022.  The criminal case is ongoing.

On August 25, 2022, before Mr. Gross entered the criminal case, Mr. Quaglin's trial was scheduled for April 10, 2023, which coincides with the Jewish holiday of Passover.  Mr. Gross is Jewish and strictly observes Passover.  Mr. McBride and Mr. Quaglin were aware that Mr. Gross did not work on Shabbos or Jewish holidays and that he would therefore be unable to attend the first week of the trial because of Passover.[1]

On March 6, 2023, Mr. McBride filed a motion to withdraw from the criminal case, informing the Court that Mr. Gross "knows Quaglin's case well."  This was and is a true statement.  The Court granted Mr. McBride's motion for withdrawal sui sponte without a hearing the same day it was filed.  On March 8, 2023, within two days, Mr. Gross withdrew from another January 6 case stating that he needed to "devote [his] time and attention to Mr. Quaglin's [case]."  This also was and is a true statement.  From the moment Mr. Gross learned of Mr. McBride's withdrawal, Mr. Gross committed himself to identifying a replacement first chair attorney with extensive experience with criminal trials, and to continue preparing for Mr. Quaglin's trial so that

---

[1] The Government has argued that Mr. Gross should not have entered the case as second attorney if he knew that the first days of Mr. Quaglin's trial coincided with Passover, but if the Government is correct, it would have precluded Mr. Quaglin from hiring a Jewish attorney to assist in his case once the trial was set for Passover, creating a de facto religious test for a second attorney.  Mr. Gross could not have meaningfully assisted as second attorney without entering the case as it was necessary to be an attorney of record to communicate with the Warden of Northern Neck Regional Jail, who would not communicate with or allow visitation unless Mr. Gross was attorney of record.  It also permitted Mr. Gross to file on Mr. Quagln's behalf, to argue his motion for release, to deliver his discovery to Rappahannock Regional Jail, to visit at the DC Jail, and to receive toll free calls from the DC Jail.

he could assist Mr. Mcbride's replacement.  At no time did Mr. Gross represent to anyone that he intended to act as lead counsel at Mr. Quaglin's trial.

On March 7, 2023, the day after Mr. McBride's motion to withdraw was granted, Mr. Gross spoke to Mr. Quaglin.  Mr. Quaglin and Mr. Gross were in complete agreement that Mr. Gross should find a replacement for Mr. McBride to serve as first chair.  Mr. Gross immediately set to work to find a replacement.  Mr. Gross had and has every intention of staying on as Mr. Quaglin's attorney and doing everything he can to get the new attorney up to speed on the case and to assist at trial.

Also on March 7, 2023, the Court set a hearing for March 14, 2023, to decide Mr. Quaglin's motion for release to prepare for trial.  At that hearing, Mr. Gross argued that over the last two years Mr. Quaglin's conditions of confinement have prevented him from adequately preparing for trial, and that Mr. Quaglin should be released so that he can properly prepare for trial.  Mr. Gross also informed the Court that he would be seeking a continuance for the Passover conflict, which would only require a continuance of a few days, but Mr. Gross stressed that the main reason for the continuance was based on Mr. Quaglin's assertion that his conditions of confinement over the last two years have made it impossible for him to adequately prepare for trial, and for that reason Mr. Quaglin would be moving for a longer continuance.  *E.g.,* Tr. of March 14, 2023 Hr'g, at 27:13-18 ("Or alternatively, you can release {Mr. Quaglin] today and let us figure out a reasonable continuance so he can prepare for trial at home.  I can visit him.  I can sit with him all day and we can go through as much as we can in the time that we need and then we can go to trial in a reasonable amount of time.").  At the end of the hearing the Court denied the Motion for release, and Mr. Gross notified the Court that he would be filing a motion to continue, to which the Court responded, "I look forward to the motion."  *Id.* at 39:25, 40:5.

The next day, on March 15, 2023, Mr. Gross filed a Notice of Defendant's Intention to File a Motion for a Continuance of Trial Scheduled for April 10, 2023, and Request for an Order Granting a Continuance with Date to be Determined.  ECF No. 578.  In that Notice, Mr. Gross explained to the Court the Passover circumstances and asked for a continuance, but also asked for leave until March 23, 2023, to brief a motion for continuance to explain to the Court in detail why Mr. Quaglin should be granted "a fair amount of time for Mr. Quaglin's new counsel to prepare with his client for trial, given the unique circumstances of Mr. Quaglin's case."  In other words, Mr. Gross was asking for a continuance for two separate reason: first, he was asking for a short continuance of a few days because of the Passover conflict, and second, he was asking for a longer continuance, per Mr. Quaglin's request, because Mr. Quaglin maintains that in the last two years he has not been provided with adequate means to prepare for trial.  By that time, Mr. Gross was already in the advanced stages of exploring options for experienced criminal attorneys to serve as first chair in place of Mr. McBride.  The options included Jewish attorneys who would also need a short continuance for Passover.   At that time, Mr. Gross and Mr. Quaglin had discussed that if the Court rejects both requests and insists that Mr. Quaglin go to trial on Passover, Mr. Gross would find a non-Jewish attorney for Mr. Quaglin, Mr. Gross would assist the non-Jewish attorney up until the very last permissible moment on the eve of Passover, and Mr. Gross would begin to attend the trial as soon as Passover concluded.

On March 23, 2023, the same day Mr. Gross filed his Notice, the Government filed a response to the Notice, opposing a longer continuance but noting "that it is not opposed to a short continuance in order to accommodate counsel's religious obligations."  ECF No. 580.

A hearing was set for March 21, 2023, to discuss the continuance.  At the hearing, Mr. Gross requested that Mr. Quaglin be severed from the other two defendants and a continuance be

granted so Mr. Gross could "build a defense team for Mr. Quaglin that has a criminal attorney." Mr. Gross informed the Court that he started searching for a new attorney as soon as Mr. McBride withdrew, and that he had already met with a potential candidate on March 20.  Tr. Hr'g March 21, 2023, at 19:4-8 ("We started [searching for an attorney] on March 6th [sic, March 7], when Mr. McBride withdrew.  We already started looking for an attorney.  We met with somebody yesterday, and hopefully we'll have one soon.  It's possible to say that we are on the search and we have a potential candidate.").  At the hearing, the Court vacated the trial date and later that day the Court clerk sent out an email suggesting the next available dates to reset the trial.  Mr. Gross responded the very next day, on March 22, 2023, informing the court that he and Mr. Quaglin had settled on an attorney who could serve as first chair, and that the new attorney and Mr. Gross would be available for the earliest available trial date on July 11, 2023.

ARGUMENT

The Court Ordered Attorney Jonathan Gross to show cause as to why he should not be referred to the Committee on Grievances for the U.S. District Court for the District of Columbia for attorney discipline under D.C. Rules of Professional Conduct 1.1 (competence), 1.3 (diligence), and 3.3 (candor to tribunal).  Attorney Gross should not be referred to the Committee because attorney Gross acted at all times with competence and diligence, and with candor to tribunal.  Mr. Quaglin is and has always been satisfied with Mr. Gross' representation, and the record shows that Mr. Gross has acted with competence and diligence.  *See generally* Exhibit A, Declaration of Christopher Quaglin.  With respect to candor to the tribunal, at no time did Mr. Gross make any intentional or material misrepresentations to the tribunal.

**Rule 1.1 (competence) and Rule 1.3 (diligence)**

Rule 1.1 states that: (a) A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation; and (b) a lawyer shall serve a client with skill, and care commensurate with that generally afforded to clients by other lawyers in similar matters.

Rule 1.3 states: (a) A lawyer shall represent a client zealously and diligently within the bounds of the law; (b) A lawyer shall not intentionally (1) fail to seek the lawful objectives of a client through reasonable available means permitted by law and the disciplinary rules, or (2) prejudice or damage a client during the course of the professional relationship; and (c) A lawyer shall act with reasonable promptness in representing a client.

Attorney Gross has not violated any of the provisions of these rules in his representation of Mr. Quaglin.

***Competent representation.***    According to Mr. Quaglin, Mr. Gross has demonstrated that he is adequately knowledgeable in the law, and Mr. Gross is able to immediately provide knowledgeable responses to Mr. Quaglin's legal questions, or else Mr. Gross admits when he does not have the answer, and will research the subject or consult with others until he has an answer. According to the Rule's official comments, "In many instances, the required proficiency is that of a general practitioner," and "A newly admitted lawyer can be as competent as a practitioner with long experience." Mr. Quaglin is satisfied with Mr. Gross' skill, thoroughness and preparation. According to Mr. Quaglin, it is clear from his conversations with Mr. Gross that Mr. Gross has spent countless hours reviewing his discovery in preparation for Mr. Quaglin's trial. Mr. Gross serves Mr. Quaglin with more care than other attorneys serving similarly situated clients; Mr. Quaglin is visited in the DC Jail more than other inmates are visited by their attorneys, and Mr. Gross is more accessible by phone than other attorneys are to their clients. It

is worth noting that after Mr. Gross presented Mr. Quaglin's arguments for release at a hearing before the Court on March 14, 2023, the Court told Mr. Quaglin, on the record that "you've got a good attorney with you," referring to Mr. Gross.  Tr. of Hr'g March 14, 2023, at 26:17-18 ("Sir, you've got a good attorney with you.").

***Zealousness and diligence:***   Mr. Gross has zealously pursued Mr. Quaglin's goal of being released from pretrial detention to prepare for trial by filing numerous briefs and supplements informing the Court of Mr. Quaglin's conditions of confinement.  Since Mr. Quaglin has moved to DC, Mr. Gross has visited him almost weekly, sometimes twice in a week.  Mr. Gross is always available to speak with Mr Quaglin.  The jail only provides 15 minute calls, only at certain times during the day.  The calls are recorded and monitored and the connection is often spotty. Yet Mr. Gross always makes himself available to Mr. Quaglin by phone.  Mr. Gross is careful to always announce at the beginning of a call that the calls are attorney calls to ensure that if the Government or the Jail later tries to use the substance of the calls against Mr. Quaglin, Mr. Gross can argue that the calls are protected by the attorney client privilege.  Mr. Quaglin feels that Mr. Gross has been a zealous advocate, and has acted with diligence and care throughout his representation.

***Prejudice to Mr. Quaglin:***   The Court's order states "Quaglin's attorneys have now delayed this trial multiple times to the detriment of their client, who remains detained, and to the inconvenience of his co-defendants and the Government who seek a speedy resolution to this matter."   Mr. Gross has not caused any delays.  The Passover trial was scheduled before Mr. Gross entered the case and without Mr. Gross' input.  The Court granted the continuance on August 25, 2022, at the behest of Mr. Quaglin and his co-defendant Mr. Klein.  Tr. of Hr'g on August 25, 2022, at 20, 29.  Mr. Gross entered as second attorney and never anticipated being the

only attorney on the case.   When Mr. Gross became the sole attorney on March 6, 2023, he moved as quickly as possible to find a replacement for first chair, and in just two weeks successfully identified and engaged an experienced criminal attorney that was acceptable to Mr. Quaglin.  Had the Court denied the continuance for Passover, Mr. Quaglin would have had an attorney of his choosing with him on April 10, thanks to Mr. Gross' efforts.  As it stands, Mr. Quaglin has a new attorney that is available for the next possible date of July 11.  Regardless, Mr. Quaglin was not prejudiced by the request for a short continuance for Passover or by the request for a longer continuance to prepare for trial.  The short Passover continuance request was reasonable, as even the Government did not oppose it.  The longer continuance, if granted, would not have prejudiced Mr. Quaglin because Mr. Qualgin is the one seeking the long continuance so that he has a fair opportunity to view his discovery before trial.  As for the inconvenience to the Government and Mr. Cappucio, Mr. Gross' obligation is to Mr. Quaglin.  Mr. Quaglin sought a continuance, so Mr. Gross' obligation was to pursue his client's goals.  There was nothing unethical about asking for a long continuance.  The Court denied it, and Mr. Gross and the new attorney are prepared to represent Mr. Quaglin at the earliest possible date.

**Rule 3.3 Candor to Tribunal**

Rule 3.3(a) states: "A lawyer shall not knowingly (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, unless correction would require disclosure of information that is prohibited by Rule 1.6."

The Court issued the show cause order based on the "inconsistencies between McBride's motion to withdraw, Gross' Motion to withdraw in the Nichols case, and Gross' statements at the March 21st hearing."  The Court points specifically to (1) Mr. McBride's statement in his motion

to withdraw that "Gross knows Quaglin's case well;" (2) Mr. Gross' statement in his motion to withdraw in the Nichols case that he intends to "devote his time and attention to Mr. Quaglin's case;" (3) Mr. Gross' statement at the March 21 hearing that he "inadvertently was retained only for the habeas case Quaglin brought against the warden at Northern Neck Regional Jail;" (4) Mr. Gross' statement that he "does not practice criminal law and that he is not competent to be Mr. Quaglin's lead attorney at the trial scheduled to begin in a few weeks;" and (5) Mr. Gross' statement that "he strictly observes the holiday of Passover and would be unavailable for the first four days of the trial if it proceeds as scheduled."  All of these statements are true and none are inconsistent.

**(1) Mr. McBride's statement in his motion to withdraw that "Gross knows Quaglin's case well;"**

The fact is that Mr. Gross knows Mr. Quaglin's case well.  Mr. Gross has had access to Mr. Quaglin's discovery since late December of 2022 and has reviewed it extensively.  Mr. Gross has visited Mr. Quaglin numerous times at the DC Jail and has reviewed the discovery with Mr. Quaglin.  Mr. Gross has also discussed legal strategies with Mr. Quaglin.  Since Mr. Gross engaged the new first chair attorney, Mr. Gross has spoken to her extensively about the case, and has already made a visit to the DC Jail with her to discuss the case with Mr. Quaglin.  She and Mr. Quaglin attest that Mr. Gross is well versed in Mr. Quaglin's case.  Accordingly, Mr. McBride's representation was true, albeit, his motion failed to mention that Mr. Gross was never brought on the case as lead attorney for a criminal trial.

**(2) Mr. Gross' statement in his motion to withdraw in the Nichols case that he intends to "devote his time and attention to Mr. Quaglin's case;"**

This statement is absolutely true.  Since Mr. Gross withdrew from Mr. Nichols' case, Mr. Gross has prepared for and attended two hearings for Mr. Quaglin, and drafted and filed multiple briefs.  In the last few weeks, Mr. Gross spoke with Mr. Qauglin on the phone dozens of times

and visited him multiple times, including with the new attorney.  Indeed, Mr. Gross was with Mr. Quaglin at the remote hearing on March 21.  Mr. Gross worked tirelessly to find an appropriate attorney for Mr. Quaglin, and succeeded in two weeks in finding and properly vetting a criminal attorney with over 20 years experience who was willing to take the case, who was acceptable to Mr. Quaglin, and who was available for a two week trial on July 11.  Both Mr. Quaglin and the new attorney attest that Mr. Gross has devoted his time and attention to Mr. Quaglin's case.

**(3) Mr. Gross statement at the March 21 hearing that he "inadvertently was retained only for the habeas case Quaglin brought against the warden at Northern Neck Regional Jail;"**

Mr. Gross at no time made this statement.  Mr. Gross stated his position clearly in a Brief he submitted to the Court in anticipation of the hearing on March 21, 2023.  ECF No. 581.  Gross stated:

> As it happens, [on September 22, 2022] Mr. Gross inadvertently entered into the criminal case instead of the habeas case, and the Court graciously allowed Mr. Gross to orally enter his appearance at the hearing [for the habeas case] on September 29. That said, Mr. Gross intended to enter the criminal case as well, as he entered at the same time in the cases of Ryan Nichols and Richard Barnett. In those cases, Mr. Gross' role was to advise on Constitutional rights. In the case of Ryan Nichols, Mr. Gross was hired by Mr. McBride to assist in arguing for Mr. Nichols' release from pretrial detention, and in the case of Mr. Barnett, Mr. Gross hired by Mr. McBride as fourth chair on a team of three other attorneys, and assisted in pretrial motions involving the constitutionality of the charges against Mr. Barnett.

Mr. Gross described his entry as "inadvertent" because on September 22, 2022, when he entered the criminal case, he actually meant to enter the civil case so he could appear at the hearing on the civil case scheduled for a week later.  When he arrived at the hearing on September 29, 2022, the Court clerk noted that Mr. Gross was not entered into the case. Realizing that he had "inadvertently" entered into the criminal case when he had meant to enter

into the civil case, Mr. Gross immediately asked the Court if the mistake could be rectified, and the Court did so.

> Mr. Gross: Yes. And as a preliminary matter, I was -- I'm entered in the criminal case. I'd like to enter my appearance in the civil case now, if that's possible.

> The Court: This is not really the proper way to do it. But I take it you're barred in this Court, sir?

> Mr. Gross: Yes, I am barred in this Court.

> The Court: Mr. Rosen, any objection?

> Mr. Rosen: No, Your Honor.

> The Court: I will note your appearance in this matter as well, sir. Let me just ask you to go ahead and file the paperwork, though, with the Clerk's Office. But I have no problem with you presenting this morning.

Mr. Gross only mentioned in his brief and at the March 21 hearing that he intended to enter the civil case before he entered the criminal case to illustrate that it was reasonable for Mr. Quaglin to have a civil attorney on his team. Mr. Gross did not intend for the word "inadvertent" to have any material significance. At the hearing on March 21, 2023, Mr. Gross quoted the word "inadvertently" from his brief, assuming, perhaps incorrectly, that the Court understood the reference. Tr. of Mot. Hr'g, 7:19. Gross may not have clearly explained what he meant by "inadvertent" at the hearing on March 21, 2023. "Attorneys and even judges occasionally misspeak in open court." *Divane v. Power & Lighting Sys., Inc.*, No. 10 C 4529, at *2 (N.D. Ill. June 26, 2013). Mr. Gross was clear in his brief which was before the Court prior to the hearing. Regardless, the statement is true, and is not inconsistent with any other statements, and therefore did not violate any ethical rules.

**(4) Mr. Gross' statement that he "does not practice criminal law and that he is not competent to be Mr. Quaglin's lead attorney at the trial scheduled to begin in a few weeks;"**

Mr. Gross stated that he never practiced criminal law prior to September of 2022, but Mr. Gross never said he is "not competent to be Mr. Quaglin's lead attorney." Since September of

2022, Mr. Gross has gained substantial experience in criminal law and assisted in a junior capacity in the two week trial of Ricahrd Barnett.  Nevertheless, Mr. Gross and Mr. Quaglin prefer that Mr. Quaglin has a legal team consisting of a lead attorney with many years of criminal experience.  Mr. Gross' statements about his inexperience in criminal matters showed candor towards the tribunal.  At no time did Mr. Gross present himself to anyone as an experienced criminal attorney.  At no point did Mr. Gross ever consider being lead attorney, and from the moment of Mr. McBride's withdrawal, Mr. Gross has sought more experienced counsel to serve as lead attorney for purposes of trial.  To the extent that Mr. McBride stated in his motion for withdrawal that Mr. Gross will "assume the duties of lead counsel going forward," it can only be interpreted to mean that Mr. Gross would do so until he found a substitute lead counsel, which he set out to do immediately, and notified the court at the first possible opportunity.  If a hearing or conference had been held on Mr. McBride's motion to withdraw Mr. Gross would have stated the same at the hearing, the Court would have had the opportunity to hear Mr. Quaglin's position on Mr. McBride's Motion to Withdraw and the need for lead trial counsel.

**(5) Mr. Gross' statement that "he strictly observes the holiday of Passover and would be unavailable for the first four days of the trial if it proceeds as scheduled."**

Mr. Gross has practiced Orthodox Judaism his entire life, has served for many years as the Rabbi of Orthodox Jewish synagogues, and strictly observes Shabbos and Jewish holidays.  Mr. Gross does not hide this fact.  Mr. Gross wears a yarmulka on his head at all times, including in his three appearances before the Court on September 29, 2022,  in the civil case, and on March 14 and 21 in the criminal case.  Mr. Gross even had occasion to mention it on the record at the hearing on September 29, 2022.  Tr. of Hr'g in case 1:21-cv-1154, Sept. 29, 2022, at 65:5-6.  Attached as Exhibit B is a letter from the Rabbi of the Orthodox Jewish synagogue where Mr. Gross attends daily services.  Mr. Gross' statement that he could not attend trial on April 10

because it coincides with the holiday of Passover is a true statement, and trial had been set prior to Mr. Gross' entry into the case.

Mr. Gross did not, and would never, exploit his religious observance as a delay tactic. As mentioned above, Mr. Gross joined the case after the trial was already set for Passover. As second chair, Mr. Gross informed his client and lead counsel that he would not be able to attend the trial for the first few days. When Mr. McBride withdrew, Mr. Gross at the very first opportunity informed the Court that he would be requesting a continuance for Passover. This was only meant to be a request for a short continuance, but Mr. Gross also asked for leave to ask for a large continuance for other reasons unrelated to Passover, at the behest of his client. Had the Court denied both continuances, come hell or high water, Mr. Gross would have moved heaven and earth to ensure that Mr. Quaglin has a non-Jewish attorney to represent him on April 10. As it stands, the Court denied the longer continuance and granted the shorter continuance, which the Government did not oppose, and Mr. Gross successfully secured an experienced criminal attorney who will serve as first chair at the earliest possible date.

To the extent there was confusion or misunderstanding, Mr. Gross takes responsibility, but Mr. Gross did not make any intentional or material misrepresentations to the Court, and instead acted with candor. Accordingly, Mr. Gross was not in violation of Rule 3.3.

## CONCLUSION

For the foregoing reasons, Mr. Gross has shown good cause and the Court should not refer Mr. Gross to the Committee on Grievances for the U.S. District Court for the District of Columbia for attorney discipline under any rules of professional conduct, and allow his continued representation of Mr. Quaglin.

Dated: April 5, 2023                Respectfully submitted

                                    /s/ Jonathan Gross
                                    Jonathan Gross
                                    Bar ID: MD0162
                                    THE CLEVENGER FIRM
                                    2844 Smith Ave, suite 331
                                    Baltimore, MD 21209
                                    (443) 813-0141
                                    jon@clevengerfirm.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing is being served on opposing counsel via email on

April 5, 2023.

/s/ Jonathan Gross