UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v.           ) | 1:21-cr-40 |
| ) | |
| QUAGLIN ) | |
| ) | |

## DECLARATION OF CHRISTOPHER QUAGLIN

Pursuant to 28 U.S.C. § 1746, I, Christopher Quaglin, hereby declares as follows:

I met Mr. Gross for the first time in person at a hearing for my habeas corpus petition on September 29, 2022.

Mr. Gross was brought on by Mr. McBride. Mr. McBride told me that Mr. Gross was a civil rights attorney and would assist with my conditions of confinement. I did not know Mr. Gross prior to his representing me. In the last two years I have seen many attorneys. I could tell right away that Mr. Gross is a competent and diligent attorney. He knows my case well and he has devoted his time and attention to my case. I am now and have always been satisfied with the work he has done for me.

Mr. Gross was always attentive to my calls. We are only allowed to speak for 15 minutes at a time, and we don't know when those 15 minutes can be. Mr. Gross cannot call me to schedule calls, so they can be at any random time during the day. Also, our calls are recorded and monitored. After a 15 minute call I cannot call back immediately. The earliest I can call back is 15 minutes later, sometimes it can be many hours before I can call back. Also, the connection is often bad from the prison.

With all of those obstacles, Mr. Gross always makes himself available for my calls. He tells me to check in with him at least once a day to make sure everything is ok and so we can update each other - he can update me on my cases, and I can update him on what I am experiencing in the jail and any ideas I have for my cases. Mr. Gross always remembers at the beginning of every call to say, this is an attorney client call, so that we can argue later that these calls cannot be used against me.

Mr. Gross visits me in jail often, sometimes as much as twice in a week.  I am visited by my lawyer Mr. Gross more than any other inmate I know in the DC Jail.

Mr. Gross answers all of my questions on law.  Sometimes he will print out a case and give it to me to read.  Other times he will say he does not know the answer, but will return to me promptly with an answer after he has researched it himself or asked a colleague.  In general, my sense is that he is knowledgeable in the law.

Mr. Gross and I spoke after Mr. McBride filed his withdrawal.  Mr. Gross said he would try my case, but only if we had no other choice.  I had every confidence that Mr. Gross could try my case, but Mr. Gross and I both agreed that he should seek out a more experienced criminal attorney to lead the defense team.  Mr. Gross told me that he would search diligently for an attorney and that no matter what the court decided he would make sure that I would have an attorney available for when I went to trial, regardless of when the trial would be.  He also assured me that just as he works up until sunset on Fridays and resumes when Shabbos ends, he would work up until Passover, and resume as soon as Passover was over.

Mr. Gross is an excellent brief writer.  Mr. Gross reviews everything with me before he files a brief.  He never waits for the last minute to work on something; the minute a new brief needs to be written he is already strategizing, and he works on the brief consistently until its due.  He asks me for my input which allows me to be part of the process.  He is receptive to my input and incorporates my ideas into legal terms.  He listens carefully to me when I relay facts to him, and he asks questions for clarification if he does not understand.  This is very difficult given the phone situations I described earlier, and sometimes Mr. Gross and I will have to make as many as four or five 15 minute phone calls over the course of several hours to get the information that I want to convey.  I have reviewed Mr. Gross' briefs and in my opinion he does excellent work.

Mr. Gross has reviewed thousands of documents for my cases.  Mr. Gross and I frequently discuss other developments in January 6 cases and other sentences given to similar cases.  When new developments come to light, like the Tucker Carlson discovery of Jacob Chansley or the FBI informants found in the proud boys case, Mr. Gross takes the time to research and figure out if and how the new development can be applied to my case.  For instance, regarding my Civil case against Northern Neck Jail, he stayed informed of local news in Northern Neck, Virginia.  He shared reports with me.  He also reached out directly to the editor of the paper and to the Commonwealth attorney who revealed the scandal at Northern Neck Jail, and he brought it to the attention of the Court.

Mr. Gross has served me with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters.  Mr. Gross got me an order after two years to get gluten free

food.  I see Mr. Gross and speak to him more than other January 6 defendants speak to their lawyers.

Mr. Gross has represented me zealously and diligently.  He always seeks the objectives that I tell him to pursue.  I have not been prejudiced or damaged because of Mr. Gross.

Mr. Gross acts with promptness when representing me.  He has visited me multiple times in prison.  He is available for my calls 24/6.  I know not to call him on Shabbos or Jewish holidays, but I know I can count on him up until sunset on Friday, and as soon as Shabbos ends on Saturday evening.

Mr. Gross fulfills his duties to me despite any personal inconvenience to him, he does whatever he can within the bounds of the law to accomplish my goals. He acts with commitment and dedication to my interests.

I have been punished and cannot speak to my wife or parents.  Mr. Gross is the only way for me to communicate with my family.  I give him messages to give to my wife and parents and they give him messages and he relays them to me.

Representative Marjorie Taylor Greene came to the jail.  The jail would not permit us to give her letters.  We tried to give her letters but the jail staff forbade it.  There is no policy that says we cannot give a letter to a visitor.  It is also our constitutional right to communicate with our elected representatives.  After she left, I told everyone that my attorney was coming to visit.  All those who had letters that they wanted to get to Marjorie Taylor Greene gave me the letters which I gave to Mr. Gross.  He then delivered them to the Congresswoman at her office.  I suspect that part of my punishment right now is in retaliation for that.

I do not recall when, but Mr. Gross made it clear some time ago that he would not be at my trial on April 10 because he observes Passover.  He assured me that he would do everything he could up until passover, and that if the trial went past passover he would join.

I asked Mr. Gross to ask for a continuance for two years. I thought and still think that I need two years to prepare for my trial for many reasons.  One reason is to assemble a great defense team. This requires raising money and recruiting and vetting attorneys with strong criminal defense backgrounds and with January 6 experience.

Another reason was because I have not had the same opportunities to view discovery as other January 6 defendants.  There are 44,000 hours of video that Congress has withheld.  Just recently, Jacob Chansely was released because Tucker Carlson was permitted to play some of the video that Mr. Chansley and his attorneys were not permitted to watch.  It is my constitutional right to view my discovery.  The government claims that I did not fill out a protective order, but that is not true.  I filled it out twice.  Mr. Diaz gave it to me to sign, which I did and I gave it to

him.  Then Mr. McBride gave it to me to sign, which I did and gave it to him.  There is no evidence that both attorneys did not return it to the Government.  Regardless, even if I had signed the protective order, there was no access to evidence.com or relativity.com in Northern Neck or Rappahannock, where I was detained for over a year.  I am now in the DC Jail and I signed the protective order and I still have no access to evidence.com or relativity.com.

Aside from the 44,000 hours, I was prevented from viewing my regular discovery for 2 years.  My first attorney Carlos Diaz dropped off discovery at Essex.  The Government lost it before I had a chance to view it.  Then my next attorney dropped off discovery at the DC Jail.  The government lost it before I had a chance to view it.

Mr. Gross dropped off discovery at Rappahannock.  The Jail held it for a month before I got to view it.  I was finally given access for a few hours, but then I was transferred again and the government lost it again.  The government finally found my discovery and sent it to my wife.  My wife sent it to Mr. Gross and Mr. Gross made several trips to the DC Jail to attempt to deliver it.  The first time he tried to deliver it to me, the guard would not let me take it from him.  The second time Mr. Gross came, the Jail did not let him visit me at all.  Finally on the third attempt, he delivered it to me.  But even then, the Jail held it for a period of time because there was no laptop available for me to view it.

I also do not have adequate access to my attorney.  My phone calls are monitored and recorded.  I can only make calls for 15 minutes at a time and then I have to wait a minimum of 15 minutes before I can make another call.  Sometimes it can be as long as several hours before I can make a call.  The reception on the phone is terrible.  And I have no privacy for my calls.  My attorney can come to visit, but he cannot view the internet while he is here and he cannot use a phone.  If we were meeting in an attorney's office we would have access to research tools and could make phone calls with potential witnesses together.

Another reason I need a continuance is because of my health.  My health has suffered severely during my detention.  My arm and back were injured.  I lost and gained extraordinary amounts of weight.  I subsisted on ensure and commissary food for many months.  I have not seen a dentist in over two years.  I have other medical problems.  The Judge finally after two years issued an order for the marshals to ensure that I receive a gluten free meal, and I attribute that order to Mr. Gross fighting on my behalf.

In sum, Mr. Gross is a great attorney who has served me with devotion, care, competence, and diligence.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 4, 2023

/s/ Christopher Quaglin

Christopher Quaglin