IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*Plaintiff,*<br><br>-v.-<br><br>**CHRISTOPHER QUAGLIN,**<br><br>*Defendant.* | Case No. 21-CR-40 (TNM) |

**RESPONSE TO ORDER TO SHOW CAUSE**

Joseph D. McBride, a former attorney of record for Christopher Quaglin, a defendant in the above-captioned case, respectfully submits the following in response to this Court's ORDER to SHOW CAUSE dated March 23, 2023 (ECF No. 591).

**PRELIMINARY STATEMENT**

I have never misrepresented my medical condition to this Honorable Court. I was diagnosed with Chronic Lyme Disease in July of 2022 and began an intensive treatment regimen shortly thereafter. I am still being treated for Lyme today. My representation of Mr. Quaglin has been ethically sound, zealous, and intelligent. In March 2023, Mr. Quaglin asked me to step aside and let Attorney Jonathan Gross take over this case. I conferred with Mr. Gross at length about the change. Mr. Gross informed me that he was capable and prepared to complete the task. I respectfully submit that the following facts show sufficient cause as to why I should not be referred to the Committee on Grievances for the U.S. District Court for the District of Columbia for Attorney Discipline under D.C. Rules of Professional Conduct 1.1 (competence), 1.3 (diligence), and 3.3 (candor to the tribunal).

1.  In its Order to Show Cause ("OTSC"), the Court set forth a number of facts, including a recitation of certain procedural events, for which I was ordered to show cause why I should not be referred to the Committee on Grievances for the U.S. District Court for the District of Columbia for attorney discipline under D.C. Rules of Professional Conduct 1.1 (competence), 1.3 (diligence), and 3.3 (candor to the tribunal). This response is made pursuant to the OTSC. Although all three of the Rules cited by the Court are of equal weight, I address them out of numerical order in this Response because doing so will make more narrative sense.

2.  The District of Columbia's Rule of Professional Conduct 3.3 states, in what the undersigned believes to be the relevant part, as follows:

(a) A lawyer shall not knowingly:

(1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer, unless correction would require disclosure of information that is prohibited by Rule 1.6 [concerning attorney-client confidentiality] . . .

3.  The Court raised a number of representations by me, as opposed to Mr. Gross, which appear to be the subject of its Rule 1.6 concerns: (a) my representations to the Court concerning my health; (b) my representation on March 6, 2023, that the then-anticipated trial in *U.S. v. Nichols*, then scheduled for March 27, 2023, would present an irreconcilable conflict with the defense of Mr. Quaglin; (c) my representations concerning Mr. Gross's readiness to proceed to trial as lead attorney in this matter and (d) my advocacy on behalf of Mr. Quaglin's detention conditions. I address these *seriatim*.

4. I have had COVID-19 twice, both times with very severe symptoms. The first time was in March 2020, and the second was in May 2022, notwithstanding my "vaccination" for COVID-19 in May 2022.

5. Because I have always been in good health, I decided to get a battery of tests done after struggling to overcome long-COVID. These tests revealed an underlying medical condition related to exposure to *borrelia burgdorferi*, a bacterium that causes Lyme Disease. Shortly thereafter, I was diagnosed with chronic Lyme Disease due to a tick bite years earlier. I learned that this infection had been dormant but became active after I was vaccinated for COVID-19.

6. My physician wrote as follows in July of 2022:

> As Joseph McBride's physician, I have advised him that he should take a medically related extension including a leave of absence of approximately 2-3 months so that his medical condition can be treated appropriately. The treatment for the patient's current condition, chronic Lyme Disease, is time-consuming and requires rest. He will have multiple appointments several times weekly that include Intravenous medications, hyperbaric oxygen, and appointments with medical providers. Although he has a complex, serious chronic illness, I fully anticipate that following treatment he will be able to resume a relatively normal lifestyle, including full-time work.

A true copy of this correspondence is set forth as Exhibit A, Under Seal.

7. Lyme Disease has many symptoms, including extreme fatigue, brain fog, nerve pain, and arthritic joint pain. I have experienced them all, but notwithstanding my physician's advice, my clients do not have the luxury of allowing me a 2-3 month "leave of absence" considering the ongoing threats to their lives and liberty.

8. For this reason, I have made every effort to remain actively engaged in representing my clients, despite undergoing months of intensive treatment for my condition, as described by my doctor, from July through December of last year.

9. As set forth in D.C. Rules of Professional Conduct 3.6, "litigants have a right to present their side of a dispute to the public, and the public has an interest in receiving information about matters that are in litigation. Often a lawyer involved in the litigation is in the best position to assist in furthering these legitimate objectives. . . ." In accordance with these goals, my representation included and continues to include giving public interviews whenever the opportunity presented itself to draw attention to my clients' plights.

10. TV and/or podcast appearances are generally done from the comfort of my residence or a short trip to a local TV studio. In terms of the investment of time and expenditure of energy versus my ability to raise awareness about my clients and the issues I champion on behalf of all January Sixers—the return on investment is massive.

11. My physician wrote as follows in March of 2023:

> As Joseph McBride's physician, I have diagnosed him with a chronic, complex serious illness that requires ongoing treatment, adequate Vitamin D, and rest. His treatments include Intravenous medications, hyperbaric oxygen, and follow-up appointments with medical providers. He continues to improve, and I fully anticipate that with diligence to treatment he will be able to manage his symptoms and maintain a relatively normal lifestyle, including full-time work.

A true copy of this correspondence is set forth as Exhibit B, Under Seal.

4

12. Because warm weather relieves the joint pain occasioned by Lyme Disease and other symptoms, I often travel from my residence in New York City to my residence in Palm Beach, Florida—especially at the onset of cold weather.

13. In November of 2022, I was invited to the home of a former President of the United States for a political event, which I was pleased and honored to attend.

14. The healing warmth of South Florida notwithstanding, the effects on my compromised immune system were taking their toll, and in December of 2022, I required extensive treatment for several related acute dental conditions stemming from a failed root canal procedure on the lower right side of my mouth that I had received years earlier.

15. At that time, I moved for a continuance in *United States v. Barnett* so that I could be treated for these conditions, which motion was denied.

16. A week before Christmas, the Government filed a superseding indictment in the Barnett matter, and the trial proceeded from January 9th through 23rd of this year. During that time, I could not receive the treatment necessary for my worsening dental-related condition.

17. The failed root canal graduated to an abscess on the lower right side of my mouth. A severe bacterial infection then made its way down to the bone. Then it began to attack my lymphatic system, resulting in cellulitis of the jaw. Initially, the infection was resistant to antibiotics. The pain became so painful that prescribed narcotics could not blunt it. I ended up in the emergency room on February 8, 2023. A true copy of a record documenting the foregoing is attached as Exhibit C, Under Seal.

18. On February 10, 2023, I underwent emergency dental surgery on my jaw. This surgery cleared out the affected bone tissue and resulted and over a dozen stitches in my mouth.

My physician wrote as follows in April of 2023:

5

> Mr. Joseph McBride is a patient of record in my office. He was seen on February 6, 2023, for pain on # 31, when he was diagnosed with a fractured root and developing an infection in the area. Mr. McBride was placed on antibiotics and scheduled for extraction. Within 24 hours, Mr. McBride's condition worsened, developing into severe pain with swelling. His antibiotic prescription was changed to a stronger medication, and he was placed on more potent analgesics. He was then seen on February 10, 2023. The tooth and associated radicular cyst were surgically removed and sent for biopsy. A bone grafting procedure was then performed, and the surgical site was sutured closed. Mr. McBride tolerated the procedure well but experienced residual pain, swelling, and discomfort for several days. He returned to my office on February 27, 2023, for suture removal and post-operative follow-up.

A true copy of a record documenting the foregoing is attached as Exhibit D, Under Seal.

19.   I visited Mr. Quaglin at DC Jail on Friday, March 3, 2023. During our conversation, Mr. Quaglin indicated he wanted to change counsel and Mr. Gross to take over the case. I told Mr. Quaglin I would speak to Mr. Gross, confirm he was up to the task, and transfer the case. Shortly thereafter, Mr. Gross informed me that he was capable and prepared to complete the task. I completed the transfer to Mr. Gross by March 6, 2023. A true copy of a record documenting the foregoing, also redacting privileged information, is attached as Exhibit E (Under Seal).

20.   On March 17, 2023, I submitted a Second Supplemental Motion for a continuance in the Nichols matter for reasons entirely unrelated to the foregoing: surgery on my one-year-old daughter scheduled for March 22, 2023. A true copy of records documenting the foregoing is attached as Exhibit F, Under Seal.

21. My co-counsel in the Nichols case also filed a motion for a continuance arising from a medical emergency involving a child on March 21, 2023. A true copy of the record documenting the foregoing is attached as Exhibit G, Under Seal. I have no reason to doubt the legitimacy of this motion. In any event, the Nichols trial was indeed continued.

22. These facts should satisfy the Court concerning the bona fides of my representations concerning my health and my previous applications for continuances, as well as my attendance at Mar-a-Lago, in Palm Beach, Florida, last November, which last also appears to have attracted the Court's concern. I note for the completeness of the record, and in response to implied criticisms concerning my absences from certain proceedings in the OTSC, that my colleagues Steven Metcalf and John Kiyonaga appeared before this Court on behalf of Mr. Quaglin—fully briefed.

23. With respect to Mr. Gross, I cannot speak to his motion for a continuance (ECF 578) or to his representations to the Court at the hearing on March 21, 2023. I stand behind my representations in my motion to be relieved in favor of Mr. Gross (ECF 219) based on the information available to me at that time, which was based on my observations of Mr. Gross's abilities during our joint representation of Mr. Nichols in January; my discussions with Mr. Gross concerning his taking on the Quaglin defense; and Mr. Quaglin's expressions of confidence in Mr. Gross which, I was given to understand, were based on his discussions with the latter.

24. Finally, the Court is under a misapprehension concerning my advocacy on behalf of Mr. Quaglin, whom I began to meet Mr. Quaglin at Essex County Correctional Facility immediately after being retained. I discovered during our meetings that Quaglin had not yet had meaningful access to his discovery materials and was suffering badly from complications due to celiac disease.

25. My first appearance on Quaglin's criminal case was on August 5, 2021, when I implored this Court not to transfer Quaglin to DC Jail because of the foreseeable complications that would arise. Complications that I had long been familiar with and on the record about, such as detainee abuse and denial of discovery access.[1] Over my objections, this Court granted the Government's Motion to "Lift Order Delaying Transport to the District of Columbia," resulting in Quaglin being transferred from Essex County Correctional Facility to DC Jail. (See ECF No. 122, ORDER)

26. The investigation, effort, litigation, and advocacy work related to Quaglin's conditions of confinement, long-term denial of meaningful discovery access, and denial of medical care that followed his transfer are arguably unmatched amongst the January 6th cohort of criminal defendants. At some point, I concluded, based on the above-mentioned facts and other experiences in these proceedings, that I was most likely to be effective in assisting Mr. Quaglin in this regard via other avenues of advocacy, such as:

   a. Helping persuade members of Congress to make a highly publicized November 2021 visit to the District of Columbia jail to publicize the mistreatment of my clients and other defendants, culminating in a Report by Congresswoman Marjorie Taylor Green documenting numerous cases of abuse at DC Jail.[2]

   b. Educating and informing members of Congress about the continued abuse of January 6th Detainees at DC Jail, resulting in the December 31, 2021

---

[1] https://wehco.media.clients.ellingtoncms.com/news/documents/2021/08/05/January_Sixers.pdf

[2] See Report: Unusually Cruel by Congresswoman Marjorie Taylor Greene @ https://greene.house.gov/sites/evo-subsites/greene.house.gov/files/evo-media document/unusually%20cruel%20an%20eyewitness%20report%20from%20the%20dc%20jail.pdf

      correspondence from Congressman Clay Higgins of the House of Representatives to the Director of the federal Bureau of Prisons detailing the abuses of these defendants of which a true copy is set forth as Exhibit H.

c. Educating and informing members of Congress about the retaliatory transfer of Mr. Quaglin from DC Jail, resulting in a January 3, 2022, Correspondence from Congressman Clay Higgins and Congresswoman Marjorie Taylor Greene, signed by a total of fourteen members of Congress. BOP Director Carvajal resigned within 48 hours.[3] A true copy is set forth as Exhibit I.

d. My filing a sixty-two-page Habeas Corpus Petition on behalf of Mr. Quaglin, followed by months of corresponding motions and hearing. (See ECF No. 1, Habeas Corpus Petition, Quaglin v Garland et al, 22:cv-01154-TNM)

e. Hiring Attorney John Gross on this criminal matter and the above-mentioned habeas matter. (See ECF No. 476    Attorney Jonathan Gross Notice of Appearance; See also ECF No. 35, Attorney Jonathan Gross Notice of Appearance, Quaglin v Garland et al, 22:cv-01154-TNM)

f. Using non-traditional methods to raise awareness to Mr. Quaglin's plight, such as TV and podcast appearances, interviews with the press, and

---

[3] See Washington Post Article citing BOP Director Carvajal's resignation @ https://www.washingtonpost.com/national-security/2022/01/06/michael-carvajal-bureau-prisons-resigns/

groundbreaking use of social media, and meeting with Priests, Pastors, Rabbis, and other religions across the United States.[4]

27. As to Rules 1.1 (competence) and 1.3 (diligence), I respectfully submit that all the foregoing facts, in the context of this most extraordinary set of criminal representations and the political, social, and media forces swirling around them, should bear significantly and significantly on any estimation of both my competence and especially my diligence.

28. Representing clients such as Messrs. Nichols, Barnett and Quaglin has taken a profound toll on my health, my safety—an attempt was made on my life in April of 2022, almost certainly arising from this work—and my resources, whether professional, personal or emotional. I have had to call on every ounce of ingenuity, experience, drive and faith available to me, even in my diminished physical state, to zealously represent clients whose convictions have been treated as foreordained in the world media, every branch of government and a notoriously biased jury pool.

29. I have no regrets about investing everything I had to give these clients, regarding whose treatment by the criminal justice system the "civil liberties" bar has been so silent, a fighting chance at justice. If those efforts have been unsuccessful so far, I respectfully submit that these outcomes are not the result of a want of competence or diligence on my part, but that, to the contrary, I have given my clients everything they can and should hope to expect from knowledgeable and passionate criminal counsel committed to the rule of law and undaunted by causes considered lost by most others in my profession.

---

[4] (See Life Site News *Article* discussing Archbishop Carlo Maria Viganò has given his blessing to a 3-day fast organized by a Catholic civil rights attorney who represents January 6 detainees @ https://www.lifesitenews.com/news/abp-vigano-endorses-3-day-fast-for-january-6-lawyer-detainees/)

10

30.     WHEREFORE, I respectfully submit that the Show Cause Order be withdrawn and that no referral be made to the Committee on Grievances regarding my conduct.

Dated: New York, NY
April 10, 2023

Respectfully submitted,

/s/ Joseph D. McBride, Esq.
Bar ID: NY0403
THE MCBRIDE LAW FIRM, PLLC
99 Park Avenue, 6th Floor
New York, NY 10016
p: (917) 757-9537
e: jmcbride@mcbridelawnyc.com
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify on this 10th day of April 2023, a copy of the foregoing was served upon all parties as forwarded through the Electronic Case Filing (ECF) System.

/s/ Joseph D. McBride, Esq.
Joseph D. McBride, Esq.