UNITED STATES DISTRICT COURT
THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA            Case No.: 21-CR-40 (TNM)

v.

CHRISTOPHER QUAGLIN,

Defendant.

## STATEMENT OF FACTS FOR STIPULATED TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Christopher Quaglin, with the concurrence of his attorney, hereby submit the Elements and Statement of Facts for Stipulated Trial as to Counts 1, 2, 3, 4, 11, 20, 23, 26, 34, 35, 39, 47, 52, and 53 of the Fifth Superseding Indictment.

I. **Elements**

The essential elements of Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1), each of which the government must prove the following beyond a reasonable doubt are:

1. That the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with any officer or employee of the United States or of any agency in any branch of the United States Government;

2. That the defendant did such acts forcibly;

3. The defendant did such acts voluntarily and intentionally;

4. That the defendant did so while the officer or employee was engaged in or on account of the performance of official duties; and

5. That the assault involved physical contact with the victim or acted with the intent to

1

commit another felony.

The essential elements of the offense of Assaulting, Resisting, or Impeding Certain Officers with a deadly or dangerous weapon, in violation of 18 U.S.C. § 111(a)(1) and (b), each of which the government must prove beyond a reasonable doubt are all of the above elements of § 111(a)(1) with respect to each charge against each defendant and additionally:

6. In doing such acts, the defendant intentionally used a deadly or dangerous weapon or inflicted bodily injury.

In this case, the government further alleges that the defendant aided and abetted others in assaulting, resisting, opposing, impeding, intimidating, or interfering with certain officers. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the Court must find that the government proved beyond a reasonable doubt:

1. That others committed assaulting, resisting, opposing, impeding, intimidating, or interfering with law enforcement officers, by committing each of the elements of the offense charged;
2. That the defendant knew that assaulting, resisting, opposing, impeding, intimidating, or interfering with law enforcement officers was going to be committed or was being committed by others;
3. That the defendant performed an act or acts in furtherance of the offense;
4. That the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of assaulting, resisting, opposing, impeding, intimidating, or interfering with law enforcement officers; and

5. That the defendant did that act or acts with the intent that others commit the offense of assaulting, resisting, opposing, impeding, intimidating, or interfering with law enforcement officers.

The essential elements of the offense of Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2), each of which the government must prove beyond a reasonable doubt are:

1. The defendant attempted to or did obstruct or impede an official proceeding;
2. The defendant intended to obstruct or impede the official proceeding;
3. The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and
4. The defendant acted corruptly.

The government further alleges that the defendant aided and abetted others in committing obstruction of an official proceeding. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed obstruction of an official proceeding by committing each of the elements of the offense charged;
2. The defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others;
3. The defendant performed an act or acts in furtherance of the offense;
4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding; and

5. The defendant did that act or acts with the intent that others commit the offense of an obstruction of an official proceeding.

The essential elements of Robbery within the special maritime and territorial jurisdiction of the United States, in violation of 18 U.S.C. § 2111, each of which the government must prove beyond a reasonable doubt are:

1. That the defendant obtained property that he was not lawfully entitled to, from a person without that person's consent;
2. That the defendant used actual or threatened force, violence, or intimidation to obtain the property;
3. The defendant knowingly obtained the property in this way; and
4. The defendant committed this offense within the special maritime or territorial jurisdiction of the United States.

The government further alleges that the defendant aided and abetted others in committing Robbery within the special maritime and territorial jurisdiction of the United States. To satisfy its burden of proof in proving that the defendant aided and abetted others in committing this offense, the government must prove the following beyond a reasonable doubt:

1. Others committed robbery by committing each of the elements of the offense charged;
2. The defendant knew that robbery was going to be committed or was being committed by others;
3. The defendant performed an act or acts in furtherance of the offense;
4. The defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense robbery; and
5. The defendant did that act or acts with the intent that others commit the offense of a

robbery.

The essential elements of Civil Disorder in violation of 18 U.S.C. § 231(a)(3), each of which the government must prove beyond a reasonable doubt are:

1. That the defendant knowingly committed or attempted to commit any act to obstruct, impede or interfere with any law enforcement officer;
2. That the law enforcement officer was lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder; and
3. That the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

The government also alleges that the defendant attempted to commit the crime of civil disorder. The elements of the crime of civil disorder, each of which the government must prove beyond a reasonable doubt, are:

1. That the defendant intended to commit the crime of civil disorder, as defined above; and
2. That the defendant engaged in conduct that constituted a substantial step toward committing obstruction of an official proceeding, as defined above.

The essential elements of Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A), which the government must prove beyond a reasonable doubt are:

1. That the defendant engaged in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds;
2. That the defendant did so knowingly, and with the intent to impede or disrupt the

orderly conduct of Government business or an official functions;

3. That such conduct occurred when, or so that, such conduct, in fact, impeded or disrupted the orderly conduct of Government business or official functions; and
4. The defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

The essential elements of Engaging in Physical Violence in a Restricted Building or Grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(4) and (b)(1)(A), which the government must prove beyond a reasonable doubt are:

1. That the defendant knowingly engaged in any act of physical violence against any person or property in, or in proximity to, any restricted building or grounds.
2. In doing such acts, the defendant used or carried a deadly or dangerous weapon.

The essential elements of Disorderly or Disruptive Conduct in a Capitol Building or Grounds, and aiding and abetting, in violation of 40 U.S.C. § 5104(e)(2)(D), each of the which the government must prove beyond a reasonable doubt are:

1. That the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.
2. That the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.
3. The defendant acted willfully and knowingly.

The essential elements of Acts of Physical Violence in the Capitol Grounds or Building, aiding and abetting, in violation of 40 U.S.C. § 5104(e)(2)(F), which the government must prove beyond a reasonable doubt are:

1. That the defendant engaged in an act of physical violence in the Grounds or any of the

Capitol Buildings; and

2. That the defendant did so willfully and knowingly.

## II. Statement of Offense

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol is located at First Street, SE, in Washington, D.C., on lands reserved or acquired for the use of the United States, is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session is set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with

7

Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.   At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior facade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.   At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7.   Shortly thereafter, at approximately 2:20 p.m, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to-and did-evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused

by the unlawful entry to the Capitol-including the danger posed by individuals who had entered the Capitol without any security screening or weapons check-Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Christopher Quaglin's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, Christopher Quaglin, lives in New Brunswick, New Jersey. The defendant traveled from New Jersey to Washington, D.C.

9. Prior to January 6, 2021, Defendant Quaglin sent numerous private messages and posted numerous public status updates on his "Chris Quags" Facebook page indicating that he believed the 2020 election was stolen, that he intended to attend the rally held in DC on January 6, 2021, that he was aware that the certification process would occur on that day in the Capitol, and that he intended to obstruct the proceeding. Exhibit A are true and correct copies of statements that Quaglin made on his Facebook page and videos Quaglin posted on Facebook (Government Exhibits 704, 705, 706, 707, 701.9).

10. On the morning of January 6, 2021, defendant Quaglin went to the Ellipse in downtown, D.C., where former President Trump was speaking at the "Stop the Steal" rally. While Former President Trump was speaking, defendant Quaglin made his way to the U.S. Capitol grounds, intending to stop or prevent Congress from certifying the Electoral College vote results. Defendant Quaglin was wearing a red, white, and blue

9

Make America Great Again hoodie sweatshirt, and a black helmet, with a gas mask.

10. On January 6, 2021, defendant Quaglin joined the crowd gathering on the West Front of the U.S. Capitol grounds.

11. At or around 1:08 p.m., defendant Quaglin did voluntarily and intentionally forcibly assault, resist, oppose, impede, intimidate, and interfere with a law enforcement officer.

12. At or around 1:11 p.m. to 1:13 p.m. on the West Plaza, defendant Quaglin did voluntarily and intentionally forcibly assault, resist, oppose, impede, intimidate, and interfere with MPD Sergeant T.R., by grabbing him forcibly by the neck and pushing him backward to the ground.

13. Sergeant T.R. fell to the ground as a result of defendant Quaglin's actions. Sergeant T.R. suffered bodily injury as a result of this attack, and "smashed his knee pretty hard on the ground which caused him a great deal of pain that he suffered through for the rest of the day." He was not evacuated that day and came to work the next day, though he reported that he continued to feel pain for the next several days. As a result of Quaglin's actions, Sergeant T.R. also suffered injuries to his back, which persisted for more than one year. Sergeant T.R. received physical therapy to treat resulting injuries to his back and knee from Quaglin's assault.

14. Quaglin continued to approach the police line and pushed, hit, and confronted numerous officers.

15. At or around 1:11 to 1:13 p.m., defendant Quaglin did voluntarily and intentionally forcibly assault, resist, oppose, impede, intimidate, and interfere with a law enforcement officer, namely by shoving and pushing multiple officers on the West Plaza.

16. At or around 1:14 to 1:15 p.m. on the West Plaza, defendant Quaglin approached the police line standing behind bike rack barriers and began pulling on the bike racks. Another rioter grabbed a bike rack, and Quaglin then joined the rioters and forcibly stole a bike rack belonging to the United States Government by grabbing and forcibly pulling the bike rack out of the hands of a United States Capitol Police officer and a Metropolitan Police Department officer.

17. At around 1:37 p.m. Quaglin yelled the following at police officers: "You don't want this fight. You do not want this fucking fight. You are on the wrong fucking side. You're going to bring a fucking pistol, I'm going to bring a fucking cannon. You wait! You wait! You wait! Stay there like a fucking sheep! This guy doesn't know what the fuck is going on."

18. At or around 2:34 p.m. on the West Plaza, defendant Quaglin did voluntarily and intentionally forcibly assault, resist, oppose, impede, intimidate, and interfere with a law enforcement officer. Specifically, Defendant Quaglin pushed one police officer, pushed a different police officer causing him to fall on the ground, and then forcibly grabbed the helmet of a third police officer.

19. At approximately 2:40 p.m., a group of law enforcement officers maintained a line at the second set of glass doors inside the tunnel leading from the inaugural platform to the entrance to the Capitol. In performing their duties to protect the Capitol building, these officers fought to keep rioters out of the Capitol as the officers were attacked by rioters, including defendant Quaglin.

20. At approximately 3:03 p.m. defendant Quaglin entered the tunnel and pushed himself to the front of the police line inside the tunnel, as rioters yelled "PUSH" and pushed their bodies, shields, and objects into the police line.

21.     At or around 3:05 p.m., defendant Quaglin, along with at least one other rioter, forcibly ripped a police department-issued shield out of the hands of Metropolitan Police Department Detective P.N., who was defending the entrance door to the U.S. Capitol. Defendant Quaglin ultimately wrested the shield from the immediate and actual possession of Detective P.N, and then passed the shield back in the tunnel, out towards the rioters on the inaugural stage.

22.     At or around 3:06 p.m., defendant Quaglin voluntarily and intentionally assaulted, resisted, opposed, impeded, intimidated, and interfered with law enforcement by spraying OC spray at numerous police officers defending the tunnel, including MPD Officer O.F. Specifically, Quaglin reached around Officer O.F.'s shield and sprayed Officer O.F. directly in the face with OC spray from a distance of less than one foot.

23.     The cannister of OC spray was a dangerous weapon capable of causing serious bodily injury. Officer O.F. did, in fact, suffer serious bodily injury as a result of Quaglin's spraying him in the eyes with the OC spray.

24.     At or around 3:07 p.m. to 3:12 p.m., defendant Quaglin voluntarily and intentionally assaulted, resisted, opposed, impeded, intimidated, and interfered with law enforcement when he forcibly pushed against police officers at the front of the police line using a police-issued riot shield in concert with other rioters. Quaglin's use of the shield in this instance was capable of causing serious bodily injury to officers. The shield Quaglin held was in a shield wall line, held by other rioters. As Quaglin pushed the shield into the police, at least one officer next to Quaglin became crushed by the force of the rioters behind the shields.

Without waiving any arguments set forth in Mr. Quaglin's Motion prior filed motions to dismiss Count Thirty Four, the parties agree that if the Court finds the existence of these facts beyond a reasonable doubt, this evidence would establish each and every element of the charged offenses for Counts 1, 2, 3, 4, 11, 20, 23, 26, 34, 35, 39, 47, 52, and 53 of the Fifth Superseding Indictment, in light of the Court's ruling on the Motion and without waiving defendant's objection to the Court's ruling.

## DEFENDANT'S ACKNOWLEDGMENT

I, Christopher Quaglin, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. I have had sufficient and ample time and opportunity to read, review, and consider the statement of offense. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

_____
Christopher Joseph Quaglin

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

_____
Maria Rodriguez

Government Acknowledgment

I have read this statement of offense, and believe it to be true and accurate.

_____
Ashley Akers,
Trial Attorney

14