UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-40 (TNM) |
| | : | |
| CHRISTOPHER JOSEPH QUAGLIN, | : | |
| | : | |
| Defendant. | : | |

OPPOSITION TO DEFENDANT'S MOTION
TO VACATE "STIPULATED TRIAL AGREEMENT"

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this motion in opposition to defendant Christopher Quaglin's Motion to Vacate Stipulated Trial Agreement, Dkt. 778.

**I.    FACTS**

   **A.    The Court's Colloquy And Adjudication Of Guilt At The July 10, 2023, Trial**

On July 10, 2023, this Court adjudicated the defendants guilty of Counts 1, 2, 3, 4, 11, 20, 23, 26, 34, 35, 39, 47, 52, and 53 of the Fifth Superseding Indictment, Dkt. 179. The adjudication of guilt followed the joint submission of a Statement of Facts for Stipulated Trial ("Statement" or "Statement of Facts"), Dkt. 674. The Statement listed the elements of every charged offense, *id*. at 1-7, followed by a Statement of Offense, outlining the attack at the U.S. Capitol on January 6, 2021, and the defendant's conduct on that date, *id*. at 7-13. The Statement was signed by the defendant after an acknowledgement paragraph, which provides:

> I, Christopher Quaglin, have read this Statement of Offense and have discussed it with my attorney. I fully understand this Statement of Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. I have had sufficient and ample time and opportunity to read, review, and consider the statement of offense.

1

>No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

*Id.* at 14.

Prior to the adjudication, the Court conducted a fulsome colloquy with the defendant to ensure the defendant was fully aware of his rights and agreed to the facts in the Statement. Relevant portions of the colloquy follow.

>THE COURT: Sir, let me start with a few questions. I want to remind you that you're under oath, which means you could be prosecuted for perjury if you provide untruthful answers today.
>
>. . .
>
>THE COURT: Do you understand that you're entitled to a bench trial on the charges filed against you because you've waived your right to a jury trial?
>
>DEFENDANT QUAGLIN: Yes.
>
>THE COURT: Have you discussed with your attorney the advantages and disadvantages of going to trial?
>
>DEFENDANT QUAGLIN: Yes.
>
>THE COURT: Are you completely satisfied with the services of your attorney, Ms. Rodriguez, in this case?
>
>DEFENDANT QUAGLIN: Yes.
>
>THE COURT: Have you had enough time to talk with her and discuss the charges and whether you should agree to a stipulated trial?
>
>DEFENDANT QUAGLIN: Yes.
>
>THE COURT: Have you received a copy of the indictment pending against you; that is, the written charges made against you in this case?
>
>DEFENDANT QUAGLIN: Yes.
>
>THE COURT: Have you read those charges and fully discussed the charges and the case in general with your attorney?
>
>DEFENDANT QUAGLIN: Yes.

> . . .
>
> THE COURT . . . : Mr. Quaglin, your attorney and the government have given me a document titled Statement of Facts for Stipulated Trial that describes the elements of the offense -- or the crimes with which you're charged and provides a statement of the offense and states facts specific to you.
>
> Have you read this document and discussed it fully with your attorney?
>
> DEFENDANT QUAGLIN: Yes.
>
> THE COURT: Is this your signature on page 14 indicating that you have read and agreed to it?
>
> DEFENDANT QUAGLIN: Yes.

Tr. 73:4-7, 74:5-75:1, 75:10-21.

Undersigned counsel for the government then read the elements of each offense charged and summarized each paragraph of the Statement that described the defendant's conduct on January 6. *Id*. 76:16-90:7. As counsel reviewed the elements and stipulated facts, the defendant had a physical copy of the Statement. After this thorough review of the Statement, the Court asked the defendant:

> THE COURT: . . . First, the prosecutor went through the elements of the offenses. Did you understand those elements? Those are the legal bases the government would need to prove beyond a reasonable doubt had the case gone to trial.
>
> DEFENDANT QUAGLIN: Yes.
>
> THE COURT: And then the second was the recitation of the facts that the government says -- what the government says you did on January 6th and the results of your actions. Do you, in fact, agree with that statement of facts?
>
> DEFENDANT QUAGLIN: Yes.

Tr. at 90:15-25.

The Court continued as follows, confirming the defendant's voluntariness, willingness, and understanding of the stipulation:

> THE COURT: . . . And so you're retaining your right to appeal on that count [18 U.S.C. 1512(c)(2)]. But, otherwise, you're agreeing that this statement of offense shows that you committed all of these other crimes. And, furthermore, you're agreeing that if I was right that the obstruction of an official proceeding does apply to January 6th, you're also guilty there on Count 34.
>
> . . . .
>
> THE COURT: Yes. Yeah. I think that's right. And so, Mr. Quaglin, I mean, this is -- this is your trial date. I am very happy to proceed with the trial. What I think I hear you saying is you don't want to go through with trial? You are agreeing --
>
> DEFENDANT QUAGLIN: I don't want to go through with a trial.
>
> THE COURT: -- that you committed these crimes; is that correct?
>
> DEFENDANT QUAGLIN: Yes.
>
> THE COURT: Okay. Do you have any question or confusion about this -- this document, this statement of offense -- or statement of facts for a stipulated trial document, sir?
>
> DEFENDANT QUAGLIN: No. I'm just -- again, I wish that this could have been done a lot sooner.
>
> THE COURT: Me too.
>
> DEFENDANT QUAGLIN: I am not, you know, pointing a finger at you. Obviously, both of us were on the same page with -- we both wish this was done a year ago -- or further back than a year ago. So I apologize about wasting all of the 'Court's time. It certainly wasn't my doing.

Tr. 91:6-11, 92:15-93:11.

After, the Court set forth the maximum penalties of each of the crimes, including terms of imprisonment of not more than 20 years for violations of 18 U.S.C. §§ 111(b) and 1512(c)(2). *Id*. 93:19-96:9. The Court then asked the defendant if he understood the maximum penalties, to which the defendant answered affirmatively. *Id*.

Finally, the Court discussed sentencing with the defendant, *id*. at 96:10-100:2, stating:

> THE COURT: Sir, in determining your sentence, I would be obligated to calculate and consider the applicable sentencing range recommended in the *Guidelines*

4

*Manual* for your offense for a person with your criminal history. The *Guidelines Manual* applies in every federal criminal case.

Have you and your attorney talked about the sentencing guidelines and how they may apply to your case?

DEFENDANT QUAGLIN: Yes.

. . . .

THE COURT: Do you understand that you cannot withdraw your entry into the stipulated trial simply because you do not like or agree with the sentence that is ultimately imposed in this case?

DEFENDANT QUAGLIN: Yes.

THE COURT: Do you understand that if the sentence in this case ends up being more severe than you expected, you will still be bound by your stipulated trial and will have no right to withdraw your choice?

DEFENDANT QUAGLIN: Yes.

. . . .

THE COURT: Sir, has anyone forced, threatened, or coerced you in any way into entering into the stipulated trial?

DEFENDANT QUAGLIN: No.

THE COURT: Has anyone made any promises to you in connection with your entry into a stipulated trial?

DEFENDANT QUAGLIN: No.

THE COURT: Has anyone made any promises to you as to what sentence I will impose in this case if I accept your -- this stipulated trial?

DEFENDANT QUAGLIN: No.

THE COURT: Are you entering into this stipulated trial voluntarily and of your own free will and because you're guilty and for no other reason?

DEFENDANT QUAGLIN: Yes.

THE COURT: Is there anything you do not understand about this proceeding or about the stipulated trial here?

DEFENDANT QUAGLIN: No.

> THE COURT: Is there anything you want to ask me or your attorney about the stipulated trial?
>
> DEFENDANT QUAGLIN: No. I'd just like to try to get a sentencing as quickly as possible.

Trial Tr. 96:10-17, 97:18-98:2, 99:13-100:9.

After this lengthy colloquy, the Court found the defendant competent and adjudicated his guilt, stating:

> THE COURT: I'm satisfied that the defendant is fully competent and capable of making a decision today; that he understands the nature of the charges and the consequences of this stipulated trial; that he has agreed to it knowingly and voluntarily; and that he's acting on his own free will; and that there's an adequate factual basis to provide each of the elements of the crimes with which he is charged. Therefore, I find the defendant, Christopher Joseph Quaglin, guilty of the counts -- of the following counts for the fifth superseding indictment: Count 1, 2, 3, 4, 11, 20, 23, 26, 34, 35, 39, 47, 52, and 53.

Trial Tr. 100:11-17. The Court, in consultation with the parties, then set a sentencing date. *Id*. 100:24-101:13; *see also* July 10, 2023, Minute Entry. The Court also maintained the defendant's pre-sentence detention, to which Mr. Quaglin did not object or request a change. *See id*. 102:8-9. Following several continuances, sentencing is now scheduled for May 24, 2024. *See* November 9, 2023, Minute Entry; Dkt. 754; February 5, 2024, Minute Order; April 19, 2024, Minute Entry.

On April 18, 2024, the defense filed the pending Motion to Vacate Stipulated Trial Agreement. Dkt. 778. In the motion, the defense requests the Court vacate the "Stipulated Trial Agreement that was entered into on July 10, 2023" because the defendant's prior counsel "coerced and pressured the Defendant into signing the agreement." *Id*. at 1. The motion also alleges the defendant "signed the agreement without reading it after his attorney made him sign it," *id*. at 1-2, and that the defendant's prior attorney "made many promises to the Defendant, including that she was going to get him home to 'fix his family'" and "that she could get rid of the guilty pleas at sentencing," *id*. at 2. Citing *Strickland v. Washington*, 466 U.S. 668 (1984), the defense also

6

appears to argue that by coercing the defendant into signing the statement, the former counsel provided ineffective assistance of counsel.

## II. LEGAL FRAMEWORK

Title 28, United States Code, section 2255, which supplies the basis for a motion to vacate, provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Although the defendant here is in custody, he has not been sentenced and, thus, is not "in custody under sentence of a court." 28 U.S.C. § 2255; *see also United States v. Verrusio*, 758 F. App'x 2, 3 (D.C. Cir. 2019). As such, the defendant's Motion to Vacate is more appropriately viewed as a motion for a new trial.

Federal Rule of Criminal Procedure 33(a) allows for the possibility of granting a new trial "if the interest of justice so requires." Under Rule 33 the burden of proof lies with the defense "to demonstrate that a new trial is warranted." *United States v. Borda*, 786 F. Supp. 2d 25, 31-32 (D.D.C. 2011) (citing *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982); *United States v. Reese*, 561 F.2d 894, 902 (D.C. Cir. 1977)). Meeting this burden is demanding; "[m]otions for new trial are 'not favored and are viewed with great caution.'" *Borda*, 786 F. Supp. 2d at 31 (quoting *United States v. Blackthorne*, 378 F.3d 449, 452 (5th Cir. 2004)). Indeed, this Court has noted that the "D.C. Circuit counsel that 'granting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred.'" *United States v. Beckley*, No. 21-285, 2023 WL 4547990, at *2 (D.D.C. 2023) (quoting *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014)).

### III. ANALYSIS

#### A. The Defendant's Motion Should Be Treated As One For A New Trial And, Thereafter, Dismissed As Out Of Time

The defendant did not provide a legal basis for the motion to vacate. Assuming the defendant relies on 28 U.S.C. § 2255 in bringing his motion, such a basis is inappropriate. The defendant has not been sentenced and, thus, is not "in custody under sentence of a court," 28 U.S.C. § 2255. As such, a motion to vacate pursuant to § 2255 motion is premature.

If the motion is a Rule 11(d) motion to withdraw masquerading as a motion to vacate, such motion is equally inappropriate here. *See* Rule 11(d) ("A defendant may withdraw a plea of guilty or nolo contendere after the court accepts the plea, but before it imposes sentence if the defendant can show a fair and just reason for requesting the withdrawal."). The defendant did not plead guilty; he stipulated to certain facts regarding his conduct on January 6, thereby obviating the need for the presentation of live testimony and evidence at trial, and thus allowing the Court to adjudicate his guilt based on the facts on the record. Trial Tr. 100:11-17.

Finally, although the defendant does not request a new trial, since neither a motion to vacate nor a motion to withdraw fits the facts at issue, the Court could construe this motion as one for a new trial. But a motion for a new trial would be untimely. Rule 33 imposes strict time limits on filing a motion for a new trial. If the defendant has uncovered new evidence, the motion "must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). When the motion is not based on newly discovery evidence, the motion "must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2).

Here, the defendant has not presented newly discovered evidence in his motion. As a result, the Court is left with Rule 33(b)(2), which provides that the motion for a new trial not based on newly discovered evidence must have been "filed within 14 days after the verdict or finding of

guilty." The Court convicted the defendant on July 10, 2023. July 10, 2023, Minute Entry. The defendant filed his motion on April 19, 2024, Dkt. 778, over 9 months after the date of conviction. Therefore, the Court should reject the defendant's motion for a new trial as untimely. *See Beckley*, 2023 WL 4547990, at *2 ("If an ineffectiveness claim is time barred for the purposes of a Rule 33 motion, it may instead be brought after sentencing as a collateral attack under 28 U.S.C. § 2255.") (citations omitted).

> **B.    Even If The Motion For A New Trial Is Not Untimely, The Defendant Is Not Entitled To Relief**

Even if the Court construes the defendant's motion as a motion for a new trial based on "newly discovered evidence," and thus finds the motion timely, the defendant's argument based on alleged ineffective assistance of counsel does not entitle him to relief.

While "ineffective assistance of counsel may provide the basis for a Rule 33 motion," it "may <u>not</u> serve as the basis for a new trial motion under the 'newly discovered evidence' prong of Rule 33 where the facts alleged in support of the motion were known to the defendant at the time of trial." *Beckley*, 2023 WL 4547990 at *2 (citing *Torres*, 115 F.3d at 1035). Here, the factual bases of the defendant's motion—namely, the actions of the defendant and his counsel on the day of trial— were known at the time of trial. As such, his claim of ineffective assistance of counsel based on those facts must be rejected. *See id.*

Even if the Court were to consider the factual contentions raised in the defendant's motion, they are underdeveloped and inconsistent with the record, and do not demonstrate ineffective assistance of counsel or otherwise entitle the defendant to relief.

The defendant argues that his prior attorney "coerced him to sign the agreement" while he was under extreme duress and stress and, thus, the stipulation "was not the product of a free and voluntary act." Dkt. 778 at 2. This self-serving claim is belied by the record. A review of the

9

colloquy at trial demonstrates that the defendant's stipulation was made knowingly, intelligently, and with sufficient awareness of the relevant circumstances and likely consequences. At trial, the Court confirmed with the defendant that the stipulation entered was free from force, threats, and coercion; that no one had made any promises to the defendant in connection with the stipulation; that no one had made any promises with regard to what sentence would be imposed; and that the entry of the stipulation was voluntary and of the defendant's own free will. Trial Tr. 96:10-17, 97:18-98:2, 99:13-100:9. The Court confirmed that the defendant understood the nature of the charges and the facts to which he stipulated. Trial Tr. at 90:15-25. And the Court confirmed that the defendant understood the consequences of the stipulation, including potential sentencing consequences. Trial Tr. 93:19-96:9; *see also id.* at 96:10-17, 97:18-98:2, 99:13-100:9. Based on this fulsome colloquy, which included unequivocal and confident answers from the defendant, the Court made a reasoned determination that the defendant "understands the nature of the charges and the consequences of this stipulated trial; that he has agreed to it knowingly and voluntarily; and that he's acting on his own free will . . . ." Trial Tr. 100:11-17; *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

In his motion, the defense offers nothing but a conclusory allegation and inaccurate factual recitations to support his argument that he signed the factual stipulation unknowingly and involuntarily. For example, the defendant suggests that he was provided the Statement for the first time "just a few minutes before the scheduled trial," and he was coerced into signing the statement without having an opportunity to first read or review it. Dkt. 778 at 1-2. But this contention is plainly false and stands in sharp contrast with the Court's thorough colloquy ensuring that the defendant was familiar with the stipulation, aware of his decision, and aware of its impact.

10

As the trial transcript reveals, when the government called its second witness, Quaglin's defense counsel stated that the parties had "reached an agreement" based on a draft stipulation that had been exchanged the night before. Trial Tr. at 67-69. After providing the parties a recess to finalize the agreement, the defendant was provided a printed copy of the stipulation, which he reviewed with his attorney. After that review, the defendant signed the document. *Id.* at 72. The defendant told the Court under penalty of perjury that he had read the Statement and "discussed it fully with [his] attorney." Trial Tr. 73:4-7, 75:10-18. The defendant confirmed, Trial Tr. 75:10-19, that he signed the Statement under a paragraph that reads, "I, Christopher Quaglin, have read this Statement of Offense and have discussed it with my attorney. I fully understand this Statement of Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will." Dkt. 674 at 14.

Then, while the defendant maintained a paper copy of the document to follow along, undersigned counsel orally read every element of every charged offense and fulsomely summarized the entire Statement of Facts in open court—with the defendant present. Trial Tr. 76:16-90:7. After counsel finished reading and describing in detail the Statement, the Court directly asked the defendant whether he (1) understood the elements and (2) agreed with the statement of facts. The defendant responded affirmatively to both questions. Trial Tr. at 90:15-25.

Therefore, defense's suggestion that he never had an opportunity to review the document or discuss with his attorney is meritless. And, even if the defendant untruthfully informed the Court that he reviewed the document fully with his attorney prior to signing it, after the agreement was read in open court, the defendant continued to express his understanding of, and desire to, sign the stipulation. *Id.* In fact, in stark contrast to the arguments made in the defendant's pending motion,

the defendant, before the Court, confirmed that he had committed the crimes in the Fifth Superseding Indictment and volunteered during the colloquy that, "I don't want to go through with a trial." Tr. 92:20-21. When asked if he had any "question or confusion about this – the document, this statement of offense – or statement of facts for a stipulated trial document," the defendant responded: "No. I'm just -- again, I wish that this could have been done a lot sooner." Trial Tr. 92:15-93:11.

Next, the defendant alleges that his prior attorney coerced him to sign the Statement by making "many promises to the Defendant, including that she was going to get him home to 'fix his family'" and "that she could get rid of the guilty pleas at sentencing." Dkt. 778 ¶¶ 2, 5. But at trial, the Court asked the defendant, under penalty of perjury, if "anyone forced, threatened, or coerced [the defendant] in any way into entering into the stipulated trial?" The Court also asked whether anyone had made any promises in connection with entering into a stipulated trial or the defendant's sentence. To these questions, the defendant confidently answered, "No." Trial Tr. 97:18-98:2, 99:13-100:10.

Regarding the defendant's allegation that he believed his prior attorney "was going to get him home," it too is inconsistent with the facts as they occurred at trial. At trial, the Court reviewed the maximum penalties with the defendant, including multiple counts with potential imprisonment of 15 to 20 years, Trial Tr. 93:19-96:9, and the defendant expressed no suprise that a sentencing date was scheduled or that he was taken back into custody after the stipulated trial, undercutting his contention that he was promised he would be going home. *See id*. at 102:8-9.

In summary, the defense falls far short of demonstrating that the stipulation was entered unknowingly or involuntarily, and similarly falls short in demonstrating ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687, 700 (explaining the defendant bears the burden of

demonstrating both that his counsel's performance was deficient and that the deficient performance prejudiced him). Simply put, "[n]one of this smacks of coercion." *See Beckley*, 2023 WL 4547990, at *5 (denying defendant's motion for a new trial on the basis that, in part, his attorney pressured him into a stipulated trial).

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion, Dkt. 778.

Respectfully submitted,

DATED: April 26, 2024

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Ashley Akers*
ASHLEY AKERS
MO Bar #69601
Trial Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, DC 20530
Phone: (202) 353-0521
Email: Ashley.Akers@usdoj.gov

LAURA HILL
Trial Attorney