UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **CHRISTOPHER QUAGLIN**, <br><br> Defendant. | Case No. 1:21-cr-00040-4 (TNM) |

## MEMORANDUM ORDER

After a bench trial, Christopher Quaglin was convicted of 14 federal offenses. He now seeks to set aside those verdicts. His convictions were based on a stipulation he entered with the Government. But he claims that this stipulation was invalid because he signed it under duress. He also asks the Court to order the D.C. Jail to provide him a laptop and unrestricted internet access. That is necessary, he says, so he can view the Government's evidence against him in preparation for trial. For the reasons below, the Court denies both motions.

### I.

Quaglin participated in the riot at the United States Capitol Building on January 6, 2021. Some time later, a grand jury returned an indictment against him, charging him with 14 offenses. *See* Fifth Superseding Indictment, ECF No. 179. Those charges ran the gamut from petty misdemeanors to serious felonies. *Id.* On the low end, they included trespassing offenses, which could subject him to no more than six months' imprisonment. 40 U.S.C. § 5109(b). But on the high end, they alleged that he had assaulted police officers and obstructed an official proceeding, each of which exposed him to up to 20 years in prison. 18 U.S.C. §§ 111(b), 1512(c)(2).

After several delays due to Quaglin's previous counsel's availability, the Court scheduled Quaglin's trial for July 10, 2023. *See* June 22, 2023 Minute Entry. Quaglin opted for a bench

trial, with the consent of the Government. But, on the eve of trial, he and the Government informed the Court that they had agreed to a stipulation. That stipulation did two main things: First, it memorialized the parties' agreement as to the legal elements of each offense the Government had charged. Statement of Facts for Stipulated Trial (Stipulation) at 1–7, ECF No. 674. So there was no dispute over what legal elements the Government needed to prove beyond a reasonable doubt before the Court could find Quaglin guilty. Second, it laid out detailed facts both parties had agreed were undisputed and relevant to the Government's case against Quaglin. *Id*. at 7–13. That obviated any factual dispute about what Quaglin had done. The result was that the parties presented the Court with uncontested law and undisputed facts, and simply asked the Court to apply the law to the facts. At that point, the Court's job was simple: It was to determine whether the facts showed, beyond a reasonable doubt, that Quaglin had engaged in the alleged misconduct.

Quaglin signed the stipulation. Stipulation at 14. Just above his signature is a statement titled "Defendant's Acknowledgment." *Id*. It begins, "I, Christopher Quaglin, have read this Statement of Offense." *Id*. It continues, "I agree and acknowledge by my signature that this Statement of the Offense is true and accurate." *Id*. Then, "I have had sufficient and ample time and opportunity to read, review, and consider the statement of offense." *Id*. "I do this voluntarily and of my own free will." *Id*. "No threats have been made to me." *Id*. His signature appears directly under this language. *Id*. His attorney likewise signed the same page. *Id*.

Before accepting the stipulation, the Court held a colloquy with Quaglin. *See* Bench Trial Tr. at 75–100, ECF No. 746. First, the courtroom deputy placed Quaglin under oath. *Id*. at 72:23–73:2. Next, the Court admonished Quaglin, "I want to remind you that you're under oath, which means you could be prosecuted for perjury if you provide untruthful answers today." *Id*.

at 73:5–7.  Then, the Court asked Quaglin a series of questions to ensure that he had read and understood the stipulation, and that he had voluntarily agreed to it.

These questions spanned a range of topics.  The Court asked whether Quaglin was under the influence of any substances which might impair his judgment, or whether he had recently had any kind of treatment for a condition that might suggest impaired judgment.  Bench Trial Tr. at 73:23–74:4.  Each time, Quaglin answered, "No."  *Id*.  It also asked whether Quaglin understood his right to trial and appreciated the consequences of entering into a stipulation.  *Id*. at 74:5–75:1.  And it asked whether he had read the stipulation, "discussed it fully" with his attorney, and signed it.  *Id*. at 75:10–21.  Each time, Quaglin answered, "Yes."  *Id*. at 74:5–75:21.

The Court then directed the prosecutor to summarize the contents of the stipulation, aloud, in front of Quaglin.  Bench Trial Tr. at 75:22–25.  It instructed Quaglin to "listen carefully" as she did so.  *Id*. at 75:23.  The prosecutor read verbatim the elements of each offense with which the Government had charged Quaglin.  *Id*. at 76:19–83:23.  She then summarized the facts about Quaglin's conduct to which the parties had agreed to stipulate.  *Id*. at 84:5–90:7.  And she specifically identified which exhibits the parties had agreed the Government could admit as evidence during the bench trial.  *E.g.*, *id*. at 84:20–23.

After all that, the Court asked Quaglin another set of questions to ensure he appreciated the gravity of his agreement.  It asked him whether he understood that the legal elements he had agreed to were "the legal bases the government would need to prove beyond a reasonable doubt had the case gone to trial."  Bench Trial Tr. at 90:15–19.  It also asked him whether he "agree[d] with that statement of facts" and that "this statement of offense shows that you committed all of these other crimes."  *Id*. at 90:21–91:11.  And, to be absolutely sure, it again asked him whether he understood "that by entering into this agreement" he was "agreeing that [he] committed all of

3

these various crimes we just discussed?" *Id*. at 91:20–24. One last time, the Court confirmed, "You are agreeing . . . that you committed these crimes; is that correct?" *Id*. at 92:18–23. Each time, Quaglin responded, "Yes." *Id*. at 90:15–92:24.

The Court then walked through each of the offenses that Quaglin was charged with. It laid out "the potential consequences of these various crimes." Bench Trial Tr. at 93:19–21. Thus, it read aloud to him each charge, the charge's statutory basis, and the maximum penalties that could be imposed at sentencing. *Id*. at 93:25–96:9. For example, the Court informed him that, for "Counts 1, 3, and 11," which charged Quaglin with "assaulting, resisting, impeding certain officers in violation of 18 U.S.C. § 111(a)(1)," he could be sentenced to "imprisonment for not more than 8 years, a term of supervised release of not more than 3 years, a fine not to exceed $250,000, and a special assessment of $100." *Id*. at 93:25–94:5. After each charge the Court read to him, Quaglin confirmed that he understood the possible penalties. *Id*. at 93:25–96:8. The Court then explained the sentencing process to Quaglin and confirmed he had discussed that process with his attorney. *Id*. at 96:10–98:19. Again, Quaglin said he had and confirmed he fully understood the sentencing process. *Id*.

Finally, the Court asked Quaglin a line of questions to ensure that his agreement was truly voluntary. It asked him whether he had been "forced, threatened, or coerced . . . in any way" into agreeing to the stipulation. Bench Trial Tr. at 99:13–15. It asked him whether anyone had "made any promises to [him] in connection with [his] entry into a stipulated trial," *id*. at 99:17–18, and whether anyone had "made any promises to [him] as to what sentence [the Court] will impose," *id*. at 99:20–22. To each question, Quaglin responded, "No." *Id*. at 99:16, 19, 23. And he agreed that he was "entering into this stipulated trial voluntarily and of [his] own free will and because [he was] guilty and for no other reason." *Id*. at 99:24–100:2.

4

Throughout this colloquy, Quaglin never objected to the stipulation. He did, however, occasionally raise unrelated concerns. For instance, at one point he complained that "it took forever for [him] to get discovery." Bench Trial Tr. at 91:13–16. At another, he confirmed that he was retaining certain appellate rights. *Id*. at 91:25–92:3. Notably, he remarked that he "wish[ed] that this could have been done a lot sooner." *Id*. at 93:4–5. But, ultimately, the Court asked him "I am very happy to proceed with the trial. What I think I hear you saying is you don't want to go through with trial?" *Id*. at 92:16–18. To which he replied, "I don't want to go through with a trial," *id*. at 92:20–21, because "I'd just like to try to get to a sentencing as quickly as possible," *id*. at 100:8–9. In short, Quaglin gave every indication of being eager to accept responsibility and being frustrated that it had taken so long for him to be able to do so. So, after the colloquy, and based on the stipulation Quaglin had agreed to, the Court found Quaglin guilty on each charge. *Id*. at 100:18–20.

## II.

Quaglin's first motion seeks to "vacate" his "stipulated trial agreement." Mot. to Vacate, ECF No. 778. Quaglin asserts that, at the time of his trial, his attorney—whom he hired— "coerced and pressured [him] into signing the agreement." *Id*. at 1. He also claims that, at the time he agreed to the stipulation, he was "under distress" from some combination of "the jail," "the circumstances," and "his attorney," as well as because his wife had just filed for divorce. *Id*. at 1–2. This motion fails.

To start, at this point, there is no "agreement" to "vacate." Quaglin was found guilty of fourteen federal offenses after a bench trial. *See* July 10, 2023 Minute Entry. His stipulation, which he now challenges, was simply an agreement as to the law and facts that the Court would consider in determining his guilt or innocence. *See* Stipulation. Thus, when Quaglin purports to

challenge the "agreement," he is really attacking his judgment of conviction itself. And because he does not ask that the Court enter a judgment of acquittal, but merely vacate the conviction, his motion is best characterized as a motion for a new trial, to be handled under Federal Rule of Criminal Procedure 33.

Rule 33 immediately shows why Quaglin's motion fails. Unless a criminal defendant has new evidence to bring forward, his Rule 33 motion "must be filed within 14 days after the verdict." Fed. R. Crim. P. 33(b)(2). But Quaglin points to no new evidence, and 14 days came and went long ago. While a party may move to retroactively extend that deadline based on excusable neglect, *see* Fed. R. Crim. P. 45(b)(1)(B), Quaglin has neither requested such an extension nor pointed to any reason why his neglect here would be excusable. So based on timing alone, Quaglin's motion is doomed.

But he loses on the merits, too. Quaglin's latest attorney argues that his stipulated trial should be vacated for two main reasons. First, because "he had not had time to read the agreement," since it was presented to him "just literally a few minutes before the scheduled trial." Mot. to Vacate at 1–2 (emphasis omitted). And second, that his attorney "pressure[d] and coerce[d]" him into signing the agreement by, among other things, "ma[king] many promises," "including that she was going to get him home to 'fix his family.'" *Id*. at 2. Neither argument has merit.

These arguments are flatly contradicted by the record. The claim that Quaglin did not read the stipulated trial agreement before signing it flies in the face of the representations he made under oath to this Court. At Quaglin's trial, the Court asked, "Have you read this document and discussed it fully with your attorney?" Bench Trial Tr. at 75:16–17. Quaglin, *under oath*, responded, "Yes." *Id*. at 75:18. The Court asked again, "Is this your signature, . . .

6

indicating that you have read and agreed to it?" *Id*. at 75:19–20.  Quaglin, *under oath*, again answered, "Yes." *Id*. at 75:21.  And he signed the statement on the stipulation's last page, stating, "I, Christopher Quaglin, have read this Statement of the Offense" and "I have had sufficient and ample time and opportunity to read, review, and consider" it.  Stipulation at 14.

The same is true of his duress claims.  At the trial, the Court asked Quaglin, "has anyone forced, threatened or coerced you in any way into entering into the stipulated trial?"  Bench Trial Tr. at 99:13–15.  Quaglin, *under oath*, answered, "No." *Id*. at 99:16.  The Court asked, "Has anyone made any promises to you in connection with your entry into a stipulated trial?" *Id*. at 99:17–18.  Again, *under oath*, Quaglin responded, "No." *Id*. at 99:19.  The Court asked a second time whether Quaglin had been promised anything, and Quaglin once more denied it, *under oath*. *Id*. at 99:20–23.  Finally, the Court concluded by asking, "Are you entering into this stipulated trial voluntarily and of your own free will and because you're guilty and for no other reason?" *Id*. at 99:24–100:1.  Quaglin, *under oath*, answered, "Yes." *Id*. at 100:2; *see also* Stipulation at 14 ("I do this voluntarily and of my own free will. . . .  No threats have been made to me.").

Courts may take a litigant's sworn statements at face value.  For one, there is a strong presumption in the law that a litigant may not "assume a certain position in a legal proceeding" and then turn around to "assume a contrary position" "simply because his interests have changed." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (cleaned up).  That rule is a matter of fundamental fairness, meant "to protect the integrity of the judicial process." *Id*.  And it has special force here.  Quaglin did not make any old statement to the Court.  He represented facts to the Court, *under oath*, after swearing to tell the truth, *and only the truth*.  If he violated that oath—if he lied—he is subject to significant criminal penalties.  18 U.S.C. § 1621

7

(providing up to five years' prison time for perjury). So the Court will not allow him to claim he lied under oath, simply because his earlier position no longer benefits him.

But that is just what Quaglin wants to do here. Quaglin, knowingly and voluntarily, agreed to the stipulation of facts, signed it, and produced it to the Court. He agreed to be bound by its terms. But now he has buyer's remorse and wants to have it set aside. This he cannot do. A defendant may not argue that he perjured himself just to walk back an agreement he regrets.

That is especially true here. The Court reassured Quaglin that it was happy to proceed with the trial that day, as planned. *E.g.*, Bench Trial Tr. at 92:16–16. Quaglin declined. *Id*. at 92:20–21. Instead, he repeatedly emphasized, he "wish[ed] that this could have been done a lot sooner," *id*. at 93:4–5, and wanted to fast forward and "get to a sentencing as quickly as possible," *id*. at 100:8–9. Based on that extended colloquy, Quaglin's state of mind at the time is clear: He bore a genuine desire to dispense with his trial and proceed quickly to the sentencing phase.

In sum, Quaglin signed the stipulation and agreed to be bound by its terms. He engaged in a lengthy colloquy with the Court, where he made clear that he had read and understood the stipulation, and that he was neither being coerced nor under duress. That is enough, standing alone, to sustain his conviction. *Cf. United States v. Jackson*, 26 F.4th 994, 998–99 (D.C. Cir. 2022); *United States v. Lee*, 888 F.3d 503, 508 (D.C. Cir. 2018) (both in plea agreement context). The unsworn assertions of Quaglin's latest attorney, who was not present at trial, are insufficient to show Quaglin perjured himself. *See* Bench Trial Tr. at 97:18–22 ("THE COURT: Do you understand that you cannot withdraw your entry into the stipulated trial simply because you do not like or agree with the sentence that is ultimately imposed in this case? DEFENDANT QUAGLIN: Yes.").

8

\*   \*   \*

The Court would reach the same conclusion if Quaglin's motion were instead characterized as a motion to set aside a guilty plea. Fed. R. Crim. P. 11(d). To be sure, Quaglin *did not* plead guilty. But a stipulated bench trial is an unusual procedure and it shares many features of a guilty plea. So it warrants some brief discussion.

Quaglin has been convicted but not yet sentenced. That means a guilty plea could be set aside only if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). He cannot. Quaglin points only to a change of heart and a belated suggestion that he perjured himself. That won't go. The same reasons the Court found to be insufficient to justify a new trial also cannot justify setting aside a guilty plea. *See Jackson*, 26 F.4th at 998–99; *Lee*, 888 F.3d at 508.

### III.

Next, Quaglin moves for the Court to "grant him access to Evidence.com," to provide him "access to a laptop," and to allow him "access to the internet." Mot. for Access at 1, ECF No. 777. This motion fails. Quaglin points to no legal justification for granting it and, in any event, has already been supplied far greater access than the law requires.

Quaglin's motion cites no law—no statute, no regulation, no case—to suggest that he is entitled to the relief he seeks. Nor, assuming that the Court *can* order this relief, does he point to any reason it *should*. Quaglin is represented by an attorney. *See* April 19, 2024 Minute Entry. In nearly every other criminal proceeding in this country, when a defendant is incarcerated, his attorney views the evidence on his behalf, shows him the most salient evidence, and discusses it all with him, before deciding how to proceed. Quaglin never explains why that standard practice would not work here, especially given that he only has a sentencing—not trial—to prepare for.

More, as the Government points out, Quaglin has already gotten unusually broad access to evidence. Quaglin is housed at the D.C. Jail, where he has been given "full-time access to a tablet, which can be used to access" multiple discovery databases, including Evidence.com, without need to access the internet. Opp'n to Mot. for Access at 1, 2, ECF No. 779. He has also been given 24/7 access to his attorney, including through an unmonitored telephone line and access to an "electronic messaging communication portal." *Id*. at 1. And he has "access to a laptop provided by the jail upon request." *Id*. Quaglin's motion does not rebut these assertions, except to make a conclusory claim that he "has never had access to Evidence.com." Mot. for Access at 1.

To the Court's knowledge, this kind of electronic access was basically unheard of before 2021. And it remains highly unusual in other jails and for defendants who were not charged with January 6-related offenses. Still, Quaglin seeks unrestricted access to a laptop—above and beyond what is available to other inmates—and unfettered internet access. Mot. for Access at 1. But he has given no reason why such preferential treatment would be appropriate, nor why his current accommodations are insufficient. Since he has provided no reasons for the extraordinary relief he seeks, the Court denies his motion.

### IV.

For all these reasons, the Court **ORDERS** that Quaglin's Motion to Vacate Stipulated Trial Agreement, ECF No. 778, and Motion to Access Discovery, Laptop, and Internet, ECF No. 777, are **DENIED**. His sentencing date remains unchanged.

**SO ORDERED**.

Dated: May 1, 2024                                                  TREVOR N. McFADDEN, U.S.D.J.